UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALICIA COLON,

                                        Plaintiff,

                                                            5:23-cv-00913
v.                                                          (BKS/TWD)

ANTHONY DAVIS, et al.,

                                        Defendants.
_____

APPEARANCES:

ALICIA COLON
*Plaintiff*, *pro se*
154 Hudson St.
Floor 2
Syracuse, NY 13204

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

       The Clerk has sent the Court a civil rights complaint filed by Alicia Colon ("Plaintiff")

for initial review pursuant to 28 U.S.C. § 1915 together with an application to proceed *in forma*

*pauperis* ("IFP").  (Dkt. Nos. 1, 2.)  For the reasons discussed below, the undersigned grants

Plaintiff's IFP application and recommends dismissal of Plaintiff's complaint in its entirety.

## I.       IFP APPLICATION

       "When a civil action is commenced in a federal district court, the statutory filing fee,

currently set at $402, must ordinarily be paid."  28 U.S.C. § 1914(a).  A court is authorized,

however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee

for commencing an action.  28 U.S.C. § 1915(a)(1).  After reviewing Plaintiff's IFP application

(Dkt. No. 2), the undersigned finds she meets this standard.  Therefore, Plaintiff's IFP application is granted.[1]

## II.    INITIAL REVIEW OF THE COMPLAINT

### A.    Legal Standard

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In addition, the Court shall dismiss any action where the complaint fails to allege facts plausibly suggesting subject matter jurisdiction.  Fed. R. Civ. P. 12(h)(3); *see Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 88-89 (1988) (holding subject matter jurisdiction is a "threshold question that must be resolved . . . before proceeding to the merits."); *Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 205-06 (2d Cir. 2019) ("Before deciding any case on the merits, a district court must determine that it has subject matter jurisdiction over the matter.") (citing *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014)); *Koziel v. City of Yonkers*, 352 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming *sua sponte* dismissal of complaint on initial review for lack of subject matter); *Talley v. LoanCare Serv., Div. of FNF*, No. 15-CV-5017, 2018 WL 4185705, at *5 (E.D.N.Y. Aug. 31, 2018); *Hughes v. Patrolmen's Benevolent Ass'n of the City of N.Y., Inc.*, 850 F.2d 876, 881 (2d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988)) ("A court shall, *sua sponte*, dismiss a complaint for lack of subject matter jurisdiction as soon as it is apparent that it lacks subject matter jurisdiction.").

---

[1]  Plaintiff is advised that although she has been granted IFP status, she is still required to pay any fees and costs she may incur in this action.

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim). "[E]xtreme caution should be exercised in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

The Court, however, also has an overarching obligation to determine that a claim is not legally frivolous before permitting a *pro se* plaintiff's complaint to proceed. *See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (holding that a district court may *sua sponte* dismiss a frivolous complaint, notwithstanding the fact that the plaintiff paid the statutory filing fee). "Legal frivolity . . . occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998)); *see also Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory . . . or factual contentions lack an arguable basis.").

### B.      Summary of the Complaint

Plaintiff brings this action against the Syracuse City School District ("SCSD"); Anthony

Davis, SCSD Superintendent; Monique Wright-Williams, Chief of Staff and Head of Family

Engagement Department; and Nina Vergara, Family Engagement Facilitator of SCSD Westside

Quadrant (collectively "Defendants").  (Dkt. No. 1.)

Plaintiff initially contends "Various staff & teachers throughout the thirty-four different

school sites in the [SCSD] are victims of bullying & coercion & have been since at least 2009 at

which time SCSD staff member Joseph Mazzella committed suicide."[2]  (Dkt. No. 1 at 9.[3])  She

claims "The bullying is continuous as recent as 2022-23 when a SCSD employee confided in the

Plaintiff that her teaching job is posing a severe negative impact to her mental health."  *Id*.

Plaintiff claims "This unknown employee was the only current SCSD employee to sign an online

petition created by the Plaintiff & the Unknown Employee showed up on the SCSD social media

page short after."  *Id*.  "The Plaintiff took this as a threat to her friends' safety & job security &

has since removed her online Petition from the Change.org website."  *Id*.

The remainder of the complaint appears to stem from alleged incidents spanning the

2022-23 school year.  From what the Court can glean, Plaintiff's daughter attends Delaware

Primary School and Plaintiff has been a Parent Advisory Council officer for several years.  *Id*. at

9, 12.

Plaintiff claims the SCSD "fails to fulfill their duty of fostering a safe school culture &

environment for staff, families, and students" by encouraging staff to lie and to intimidate

---

[2]  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in
the original and errors in spelling, punctuation, and grammar have not been corrected.

[3]  The complaint is 83 pages and is comprised of two standard civil rights complaints, 14
typewritten pages, and 50 pages of exhibits.  Page references to are to the numbers assigned by
the CM/ECF docketing system maintained by the Clerk's Office.

parents, families, and board members into "silence." *Id*. at 16. She claims SCSD Family Engagement has failed in their duty of assisting the Parent Teacher Organizations and the agency fails to "foster effective & meaningful family engagement opportunities at every school site which are accessible to every family regardless of the language they speak." *Id*. She complains Defendants no longer send out emails with the dates and time of the Parent Advisory Council Meetings in advance in violation of her "rights to know about Family Involvement Activities occurring at her child's school." *Id*. at 16. Despite notifying Defendants, her contact information has not been updated, which violates her right to "timely communication from the local education agency which her child attends." *Id*. She claims the individual Defendants are "bullies" and interfered with the administration of the Parent Advisory Council and "failed to uphold their duty of fostering effective Family Involvement & Participation." *Id*. at 15-16. She asserts Defendants have failed to provide the Parent Council Officers with training, additional meetings, support, and have "failed in their duty of assisting parents & families in becoming effective participants in school planning & governance within the [SCSD] agency and at school sites." *Id*. at 16. She also complains SCSD does not have an adequate website, has refused to implement "parliamentary procedure" during Parent Advisory Council Meetings, and lacks an accessible application process for jobs and volunteering. *Id*. at 18-19.

Plaintiff has also "incurred costs associated with Family Involvement as the agency does not supply her with internet in her family room or access to a printer, printer paper, printer ink, pens, staples, or other meeting supplies which are necessary to foster effective family involvement during the school site requirement monthly meetings with families." *Id*. at 12.

Moreover, on April 12, 2023, Plaintiff appeared before the "SCSD Board of Education at the general business meeting & delivered written copies of a motion to amend the SCSD

Community & Family Involvement Policy." *Id*. Her "motion included two policy changes: the first was a revision to the agencies current Parenting Description which appears on their Title 1 Family & Community Involvement Plan which they submit to NYS each year, & the second was an addition to the existing policy which stated Parents would have the right to prohibit the agency & any community partners from using virtual reality equipment with the their child or placing this type of equipment on their child's body." *Id*. However, "the amendment has not appeared on the agenda and no board member has asked her any questions about it." *Id*.

As relief, among other things, Plaintiff seeks to "preserve the safety & job security" of her friend. *Id*. at 19. She wants Delaware Primary School to be assigned a different Family Engagement Facilitator to develop a "functional Volunteer Application Process" for parents that is easy to understand. *Id*. at 20. She wants to ensure all Parent Council officers are timely notified of the dates and times of the meetings as they were prior to November 2022. *Id*. She asks that all families have access to computers, printers, and the internet. *Id*. She wants to prevent the SCSD from using virtual reality equipment in their classroom until it can be scientifically proven that it helps students learn. *Id*. She wants Defendants to provide the Parent Advisory Council with information regarding the "Pump Bus" and "where the funds for Superintendent Davis community BBQs is coming from." *Id*. at 20-21.

For a complete statement of Plaintiff's claims, reference is made to the complaint. (Dkt. No. 1.)

C.     **Analysis**

The Court lacks jurisdiction over the complaint as currently pled. "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav.*

*Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000) (citations omitted); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006); Fed. R. Civ. P. 12(h)(3).  The plaintiff bears the burden of establishing subject matter jurisdiction.  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

In order for the Court to have jurisdiction over the matter, there must either be federal question jurisdiction or diversity jurisdiction.  28 U.S.C. §§ 1331 & 1332.  Federal question jurisdiction arises in an action "arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  The complaint does not appear to assert claims that would give this Court federal question jurisdiction.  (*See generally* Dkt. No. 1.)  Although the civil cover sheet references the Every Student Succeeds Act ("ESSA"), the ESSA "does not provide a private right of action and does not create individual rights that are enforceable under a § 1983 action.  Although students and their parents are intended to benefit from the ESSA, the ESSA contains no procedures, administrative or judicial, by which individuals can enforce violations of its provisions; only the Secretary of Education can enforce a state's violation of the ESSA."  67B Am. Jur. 2d Schools § 350.  *See also Reaves v. Faulkner*, No. 7:22-CV-40-FL, 2022 WL 19236195, at *2 (E.D.N.C. Oct. 12, 2022) (finding the ESSA, which amended the No Child Left Behind Act ("NCLB"), provides no private right of action), *report and recommendation adopted*, 2023 WL 2614573 (E.D.N.C. Mar. 23, 2023); *Blakely v. Wells*, 380 F. App'x 6, 8 (2d Cir. 2009) (NCLB does not provide a private cause of action) (citing *Home v. Flores*, 557 U.S. 433, 456 n. (2009) (noting that "NCLB does not provide a private right of action" and "is enforceable only by the agency charged with administering it").

In addition, because the complaint alleges Plaintiff and Defendants are citizens of New York (Dkt. No. 1 at 1-3), there is no diversity jurisdiction.  *Lever v. Lyons*, No. 16-CV-5130,

2021 WL 302648, at *9 (E.D.N.Y. Jan. 28, 2021) (no diversity jurisdiction where parties were all citizens of New York).  In any event, Plaintiff appears to seek only injunctive relief.  (Dkt. No. 1 at 3-4.)

Because the Court lacks subject matter jurisdiction, the Court recommends dismissing Plaintiff's complaint without prejudice.  *Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018); *see also Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206-07 (2d Cir. 2019) (holding where a court dismisses a complaint for lack of subject matter jurisdiction, the court does "not have the power to reach the merits and dismiss the claims against the defendants for failure to state a claim, or to eventually dismiss the complaint with prejudice for failure to file a proposed amended complaint.").

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to replead may be denied where any amendment would be futile.  *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  "[L]ack of subject matter jurisdiction is a substantive defect that cannot be cured by better pleading."  *Moran v. Proskauer Rose LLP*, No. 1:17-CV-00423 (MAD/TWD), 2017 WL 3172999, at *3 (N.D.N.Y. July 26, 2017).

Although this Court has serious doubts about whether Plaintiff can amend to assert any form of federal jurisdiction over the situation Plaintiff describes in her complaint, in deference to Plaintiff's *pro se* status and out of an abundance of caution, the Court recommends granting Plaintiff leave to amend.

The Court advises Plaintiff that should she be permitted to amend her complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.  Any such amended complaint should specifically identify the legal theory or theories

that form the basis for her claim.  Plaintiff is cautioned that no portion of her prior complaint shall be incorporated into her amended complaint by reference.  Any amended complaint submitted by Plaintiff must set forth all of the claims she intends to assert against the Defendants and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant which Plaintiff has a legal right to pursue and over which this Court has jurisdiction.  If Plaintiff is alleging the Defendants violated a law, she should specifically refer to such law.

## III.    CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED** that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND**; and it is further

**ORDERED** that the Clerk serve a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam) on Plaintiff.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

---

[4]  If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. 6(a)(1)(C).

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1)

(Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**IT IS SO ORDERED.**

Dated:  August 30, 2023
           Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

Case 5:23-cv-00913-BKS-TWD   Document 4   Filed 08/30/23   Page 11 of 39

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

2018 WL 4185705
Only the Westlaw citation is currently available.
Underline For Online Publication Only
United States District Court, E.D. New York.

Nicholas TALLEY, Donna Evans Talley, Plaintiffs,

v.

LOANCARE SERVICING, DIV. OF
FNF, Selene Finance, Defendants.

15-CV-5017 (JMA) (AKT)
|
Signed 08/31/2018

**Attorneys and Law Firms**

Donna Evans Talley, Nicholas Talley, pro se.

Stuart L. Kossar, Esq., Knuckles, Komosinski & Manfro, LLP, 565 Taxter Road, Suite 590, Elmsford, New York 10523, Attorney for Defendant Selene Finance, LP.

Edward Rugino, Rosicki, Rosicki and Associates, P.C., 51 East Bethpage Road, Plainview, New York 11803, Attorney for Defendant LoanCare Servicing.

**MEMORANDUM AND ORDER**

Joan M. Azrack, United States District Judge

 **\*1** On August 18, 2015, Donna Evans Talley and Nicholas Talley (together "plaintiffs" or the "Talleys") filed a *pro se* complaint in this Court against Selene Financing ("Selene") and LoanCare Servicing, Division of FNF ("LoanCare") (together "defendants"). On January 21, 2016, the Court granted plaintiffs' applications to proceed *in forma pauperis*, but dismissed the complaint *sua sponte* pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Plaintiffs were given an opportunity to file an amended complaint. On February 16, 2016, plaintiffs filed an amended complaint, which seeks, among other things, injunctive relief to "[s]top illegal and fraudulent foreclosure." (Am. Compl. at 4.) Simultaneous with the filing of the amended complaint, plaintiffs filed an Order to Show Cause for a Preliminary Injunction and Temporary Restraining Order seeking to enjoin LoanCare from pursuing a foreclosure sale scheduled for March 3, 2016. In an Order dated February 24, 2016, this Court, *sua sponte* dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the prayer for injunctive relief in plaintiffs' amended complaint and denied

plaintiffs' request for a preliminary injunction and temporary restraining order. Before the Court are defendants' motions to dismiss the amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated below, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety.

**I. BACKGROUND**

The following facts are taken from plaintiffs' amended complaint, the record before the Court and fillings from the foreclosure action. In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of public records, including state court filings. Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc., 369 F.3d 212, 217 (2d Cir. 2004). The Court can also consider exhibits —such as copies of the mortgage and mortgage assignments —which are attached or integral to the amended complaint. Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004).

**A. The Bay Shore Mortgage**
On March 7, 2009, Nicholas Talley and Donna Evans Talley executed a mortgage in favor of non-party Lend America (the lender) in the principal sum of $311,558 concerning a property located at 22 Lakeland Street, Bay Shore, New York ("the Bay Shore property"). (Am. Compl., ECF No. 7 at 15-16.) Plaintiffs claim that there was no recording of the original title or delivery of the mortgage or deed to plaintiffs. (Id. at 5.) Plaintiffs further allege that Lend America became defunct in December of 2009 and that no assignments of the mortgage occurred prior to 2012. (Id.) By way of an endorsement to the note and two assignments of the mortgage, the loan instruments were transferred to defendant LoanCare on February 27, 2012. (Id. at 5, 8-12.) The assignment to LoanCare was recorded on April 10, 2012 in the Suffolk County Clerk's Office. (Id. at 5.) On March 31, 2015, LoanCare assigned the mortgage to defendant Selene. (Id. at 24-25.)

**B. The Foreclosure Proceeding**
 **\*2** Plaintiffs defaulted on the note and mortgage by failing to make their monthly payment due in January 2011 and each month thereafter. (Kossar Decl. Ex. J, ECF No. 42-11 at 3.) As a result, LoanCare commenced an action against plaintiffs in New York State Supreme Court, Suffolk County on March 19, 2012. (Id.) In the Talleys' verified joint answer, they admitted their default in payments but requested a

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

Case 5:23-cv-00913-BKS-TWD    Document 4    Filed 08/30/23    Page 12 of 39

judicially mandated loan modification. (Id. at 8.) The state court denied the Talleys' request, noting that after numerous prior attempts the parties had not been able to reach an agreement to modify the loan or settle the action. (Id.) The Talleys also asserted fifteen affirmative defenses, alleging, among other things: lack of personal jurisdiction; lack of standing and legal capacity; fraud in connection with the origination and the servicing of the loan; lack of good faith with respect to a loan modification; and LoanCare's failure to state a cause of action, mitigate damages and comply with the provisions of Real Property Actions and Proceedings Law and Banking Law. (Id. at 3.) LoanCare moved for summary judgment against the Talleys seeking to strike their answer and dismiss their affirmative defenses amongst other relief. (Id.) The Talleys opposed the motion and cross moved for summary judgment seeking dismissal of the complaint on the grounds that LoanCare lacked standing. (Id. at 4.)

In an Order dated April 11, 2014, the state court denied the Talleys' cross motion for summary judgment in its entirety. (Id.) In response to the Talleys' lack of standing defense, the court found that, "as holder of the endorsed note and as the assignee of the mortgage, [LoanCare] ha[d] standing to commence [the foreclosure] action. (Id. at 5.) The court noted that LoanCare demonstrated that it had been in "continuous possession of the note and mortgage since February 27, 2012," concluding that LoanCare "is the transferee and holder of the original note as well as the assignee of the mortgage by virtue of the written assignments." (Id. at 6.) In sum, the court held that LoanCare satisfied its *prima facie* burden as to the merits of the foreclosure action as it produced the endorsed note, the mortgage and assignments as well as evidence of plaintiffs' nonpayment. (Id. at 5.) Further, the court noted that LoanCare submitted proof of its compliance with the notice requirements of the RPAPL § 1303 and § 1304. (Id.) Thus, the court found that LoanCare established its entitlement to summary judgement and dismissed the Talleys' remaining affirmative defenses finding that plaintiff submitted sufficient proof to establish, *prima facie*, that such defenses were unmeritorious. (Id. at 5, 7-9) (noting that circumstances of fraud must be "stated in detail" and that a defense based upon the "doctrine of unclean hands" lacks merit where a defendant fails to come forward with admissible evidence of immoral or unconscionable behavior). The court also noted that the Talleys "failed to demonstrate that they made a reasonable attempt to discover the facts which would give rise to a triable issue of fact or that further discovery might lead to relevant evidence." (Id. at 8.) The court further rejected the Talleys' contention that they were entitled to a judicially mandated

loan modification and ordered the appointment of a referee to compute amounts due under the subject note and mortgage. (Id. at 8, 9.)

On September 29, 2014, the state court entered final judgment for foreclosure and sale of the Bay Shore property. (Kossar Decl. Ex. K, ECF No. 42-12 at 3-8.) The state court further ordered that LoanCare was entitled to judgment establishing the validity of the mortgage and to recover $390,013.50 with interest to date of the closing of time of the referee's sale of the subject property. (Id.)

**C. The Instant Action**

Plaintiffs' amended complaint alleges fraud against defendants LoanCare and Selene along with other claims under: (1) the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605, § 2608; (2) federal regulation 24 C.F.R. § 203.350 [1] associated with the National Housing Act, 12 U.S.C. § 1701; (3) various provisions of the Uniform Commercial Code ("UCC"); (4) the Pooling and Servicing Agreement ("PSA") that governs plaintiffs' mortgage; and (5) fraud. [2] (Amend. Compl.) Though stated somewhat differently, plaintiffs' amended complaint appears to reiterate their contentions from the prior state court foreclosure action, specifically alleging that LoanCare did not have standing to foreclose on the Bay Shore property and that the mortgage and its assignment to LoanCare, and subsequently to Selene, were invalid and therefore unenforceable. [3] (See Am. Compl.)

[1]    Plaintiffs also allege a violation of 24 C.F.R. § 203.35 in their amended complaint, (Am. Compl. at 5), but note in their opposition to defendant LoanCare's motion to dismiss that this was an error. (Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 3.)

[2]    Though the amended complaint seeks relief from "LoanCare harassing us and placing us under duress" (Am. Compl. at 5-6), the only allegation of such harassment appears in plaintiffs' opposition to defendant LoanCare's motion to dismiss. (See Pls.' Opp. to LoanCare's Mot. to Dismiss, ECF No. 39-12 at 5-6.) A plaintiff "cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [d]efendants' motion to dismiss", K.D. ex rel. Duncan v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 (S.D.N.Y. 2013). In any event, plaintiff's conclusory assertions of

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

harassment are insufficient to state any plausible claims.

3    The Court notes that plaintiffs appear to use the terms "fraud", "fraudulent concealment" and "fraud in the inducement" interchangeably.

**\*3** Specifically, plaintiffs allege that the original deed has never been delivered since the inception of the mortgage. (Id. at 3.) Plaintiffs claim that although the original lender, Lend America ceased to exist as of December 2009, the mortgage was never assigned in the years 2009 through 2012. (Id.) Plaintiffs allege that Lend America "acquired the loan without providing principal/issuer resulting in no securitization of an FHA security instrument from 2009-2012." (Id.) Plaintiffs appear to allege that "no delivery of deed and title" concerning plaintiffs' mortgage "proves deceptive practices and fraud was the intention from the origination of the mortgage." (Id.) Plaintiffs further allege that defendants have no standing under Article III of the Constitution because the original title was not recorded or delivered to plaintiffs. (Id. at 5-6.) Finally, plaintiffs allege that "even if this was a legal foreclosure, we were not given our due process because we were not notified by LoanCare or the Court of our Right to Appeal thereby denying us 'due process'." [4] (Id. at 6.) Specifically, plaintiffs allege that they did not receive the Notice of Entry of Final Judgment for Foreclosure and Sale from LoanCare until February 6, 2015 and that the September 29, 2014 judgment is in violation of the PSA, RESPA and the UCC because the mortgage and note were transferred to Selene on August 1, 2014.[5] (Id.)

4    To the extent that plaintiffs attempt to allege a due process violation under 42 U.S.C. § 1983, such claim is unwarranted as the defendants are private parties, not state actors.

5    According to the loan transfer documents attached to plaintiffs' amended complaint, the mortgage and note were transferred to Selene on March 31, 2015. (See Am. Compl. at 23-24.) However, Selene first became involved with plaintiffs' loan when it became a servicer of the loan on August 1, 2014. (Pls.' Opp. to Def. LoanCare's Mot. to Dismiss, ECF No. 35-1, Ex. H at 17.)

Plaintiffs seek the following relief: "[d]efendants produce orig[inal] deed of mortgage, title with covenants"; "[r]eimburse[ment] [of] $4,336 for services not rendered (deed/title)"; "[p]rove securitization of mortgage from 2009

to present"; "[p]roduce chain of assignment"; "[e]xplain no recordation of closing documents"; "[r]eveal identity of principal/issuer"; "LoanCare cease and desist from harassing us and placing us under duress since the mortgage has been sold to Selene"; "[s]top illegal and fraudulent foreclosure by prior servicer, LoanCare without assignment." (Id. at 4.)

Defendants filed separate motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), claiming that plaintiffs' claims should be dismissed because (a) they are barred by the *Rooker-Feldman* doctrine; (b) are barred by the doctrines of *res judicata* and collateral estoppel; and (c) fail to state a claim upon which relief can be granted.[6]

6    Plaintiffs filed for Chapter 13 bankruptcy on June 5, 2017. (Pls.' Opp. to Mot. to Dismiss, Ex. J, ECF No. 35 at 37.)

## II. DISCUSSION

### A. Standard of review

The court is mindful that when considering a motion to dismiss a *pro se* complaint, the court must construe the complaint liberally and interpret the complaint "to raise the strongest arguments they suggest." Treisman v. Federal Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). "However, mere conclusions of law or unwarranted deductions need not be accepted." Bobrowsky, 777 F. Supp. 2d at 703 (internal quotation marks and citations omitted).

#### 1. Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) requires the dismissal of a claim when there is a "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A case is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see Fed. R. Civ. P. 12(b)(1). In reviewing a motion to dismiss under this Rule, the Court accepts all factual allegations in the complaint as true. Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998). However, the Court should not draw inferences favorable to the party asserting jurisdiction. Id. In resolving a jurisdictional issue, the Court may consider affidavits and other materials beyond the pleadings, but may not rely on mere conclusions or hearsay statements contained therein. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d

Case 5:23-cv-00913-BKS-TWD Document 4 Filed 08/30/23 Page 14 of 39
Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)
2018 WL 4185705

Cir. 2004); see also All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89, n. 8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) ... does not convert the motion into a motion for summary judgment under Rule 56.").

**2. Fed. R. Civ. P. 12(b)(6)**

**\*4** To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege sufficient facts "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006). Motions to dismiss invoking *res judicata* and collateral estoppel are properly brought under Rule 12(b)(6). See Hirsch v. Desmond, No. 08–CV–2660, 2010 WL 3937303, at *2 (E.D.N.Y. Sept. 30, 2010) (collateral estoppel); Wiercinski v. Mangia 57, Inc., No. 09–CV–4413, 2010 WL 2681168, at *1 (E.D.N.Y. July 2, 2010) (*res judicata* ).

**B. *Rooker-Feldman* Doctrine**

Defendants' initial argument is that this Court lacks jurisdiction to hear this case under the *Rooker-Feldman* doctrine. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) (holding that only the Supreme Court can entertain a direct appeal from a state court judgment); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483, n.3 (1983) (finding that federal courts do not have jurisdiction over claims which are "inextricably intertwined" with prior state court determinations). The *Rooker-Feldman* doctrine "recognizes that 'federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments.' " Alston v. Sebelius, CV 13-4537, 2014 U.S. Dist. LEXIS 123613, at *23-24 (E.D.N.Y. July 31, 2014) (report and recommendation), adopted by, 2014 U.S. Dist. LEXIS 122970, 2014 WL 4374644 (E.D.N.Y. Sept. 2, 2014) (quoting Hoblock v. Albany Cnty. Bd. of Elections, 422 F.3d 77, 84 (2d Cir. 2005) ). "The doctrine applies when a litigant seeks to reverse or modify a state court judgment or asserts claims that are 'inextricably intertwined' with state court

determinations." Park v. City of N.Y., No. 99–Civ–2981, 2003 WL 133232, at *7 (S.D.N.Y. Jan. 16, 2003) (citations omitted). The doctrine precludes a district court from hearing "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

The Second Circuit has established four requirements that must be satisfied for the *Rooker–Feldman* doctrine to apply: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must complain of injuries caused by a state court judgment;" (3) "the plaintiff must invite district court review and rejection of the judgment;" and (4) "the state-court judgment must have been rendered before the district court proceedings commenced." Hoblock, 422 F.3d at 85 (internal quotation marks and citations omitted). The first and fourth requirements are procedural and the second and third are substantive. Id.

Specifically, with respect to foreclosure proceedings, "courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker–Feldman* doctrine." Ashby v. Polinsky, No. 06–CV–6778, 2007 WL 608268, at *1 (E.D.N.Y. Feb. 22, 2007) (internal quotation marks and citation omitted), aff'd, 328 F. App'x 20 (2d Cir. 2009); see also Done v. Wells Fargo Bank, N.A., No. 08–CV–3040, 2009 WL 2959619, at *3 (E.D.N.Y. Sept. 14, 2009); Ward v. Bankers Trust Co. of California, N.A., No. 09–CV–1943, 2011 WL 1322205, at *5 (E.D.N.Y. Mar. 29, 2011). This even includes challenges to a judgment of foreclosure that was allegedly procured by fraud, as plaintiffs have alleged herein. See, e.g., Swiatkowski v. Citibank, 745 F. Supp. 2d 150, 164–65 (E.D.N.Y. 2010) aff'd, 446 F. App'x 360, 361 (2d Cir. 2011) (finding *Rooker–Feldman* doctrine applied to allegations that defendants engaged in a pattern of submitting fraudulent and perjurious documents related to the judgment of foreclosure and sale in other courts and that the allegations and relief sought were "inextricably intertwined with the state court judgment and would require overturning the state court judgment"); Parra v. Greenpoint Mortgage Co., No. Civ.A 01–CV–02010, 2002 WL 32442231, at *2 (E.D.N.Y. Mar. 26, 2002) ("The fact that [a] plaintiff alleges that a state court judgment was procured by fraud does not remove [the] claims from the ambit of *Rooker–Feldman*"); Dockery v. Cullen & Dykman, 90 F. Supp. 2d 233, 236 (E.D.N.Y. 2000) (same).

**\*5** In the instant case, *Rooker-Feldman* bars plaintiffs' claims. The procedural requirements of *Rooker–Feldman* are satisfied. First, plaintiffs lost in state court. (Kossar Decl. Exs. J, K.) Second, the state court granted LoanCare summary judgment and denied plaintiffs' cross-motion for summary judgment by Order dated April 9, 2014, and issued a foreclosure judgment on September 29, 2014. (See id.) Since those judgments predate the August 18, 2015 filing of the initial complaint in the instant action, (see Compl., ECF 1), all pertinent state-court decisions were issued before the proceedings in this Court commenced.

The substantive requirements of *Rooker–Feldman* are also satisfied because plaintiffs' amended complaint seeks review and rejection of those state court decisions. Plaintiffs' claims complain of injuries, including, "deceptive practices and fraud" at the origination of the mortgage due to no delivery or recording of closing documents and seeks to "[s]top illegal and fraudulent foreclosure," in contravention of the state court judgment of foreclosure and the state court's acceptance of the validity of the mortgage documents that formed the basis for that judgement. (Am. Compl. at 4-6.) See Trakansook v. Astoria Fed. Sav. & Loan Ass'n, No. 06–Civ–1640, 2007 WL 1160433, at *5 (E.D.N.Y. Apr. 18, 2007), aff'd, No. 07–2224–CV, 2008 WL 4962990 (2d Cir. Nov. 21, 2008) (holding that because plaintiff's complaint asked the court "to vacate the judgment of foreclosure and sale and award her title to the property, it [was] plain that she [was] inviting [the] court to 'reject' the [state court] order."); Done v. Option One Mortgage, No. 09–civ–4770, 2011 WL 1260820, at *6 (E.D.N.Y. Mar. 30, 2011) (concluding substantive requirements of *Rooker-Feldman* met where "[a]lthough plaintiff ha[d] made a cursory reference to seeking monetary damages, it [was] abundantly clear that the whole purpose of th[e] action [was] to undo the foreclosure judgment").

In their amended complaint, plaintiffs contend that LoanCare had no standing to bring the state court foreclosure action. (See Am. Compl.) However, as plaintiffs admit, the state court rejected this exact contention in its final judgment. (Pls.' Supplemental Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 43 at 4; Kossar Decl. Ex. J at 7 ("The assertions by the defendant mortgagors as to the plaintiff's alleged lack of standing, which rest, *inter alia*, upon alleged defects in the assignments, rife with speculation, are rejected as unmeritorious ...").) In opposition to defendants' motion to dismiss, plaintiffs specifically state that they are seeking "[r]escission of [f]inal [s]ummary [j]udgment", that this Court "[r]ender the lien unenforceable due to fraudulent concealment", and seek "[d]ismissal of the [f]oreclosure due to lack of [s]tanding." (Pls.' Opp. to defendant LoanCare's Mot. to Dismiss, ECF No. 39-12.) Plaintiffs are requesting this Court to do exactly what *Rooker-Feldman* forbids—to overturn the New York Supreme Court judgment of foreclosure. See Trakansook, 2007 WL 1160433, at *5 ("Because [plaintiff's] complaint asks this court to vacate the judgment of foreclosure and sale and award her title to the property, it is plain that she is inviting this court to 'reject' the [state court order]."). A ruling in plaintiffs' favor "would effectively declare the state court judgment [of foreclosure] fraudulently procured and thus void, ... which is precisely the result that the *Rooker–Feldman* doctrine seeks to avoid." Kropelnicki v. Siegel, 290 F.3d 118, 129 (2d Cir. 2002).

Moreover, plaintiffs' attempt to thwart application of *Rooker-Feldman* by labeling their claims as "fraud in the inducement" and "fraudulent concealment" rather than the "fraud" they alleged in the state action fails. Plaintiffs' claim of "newly discovered facts of fraud in the inducement" based on the actions of third parties at the time of the loan origination fails to preclude application of *Rooker-Feldman*.[7] (Pls.' Opp. to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Plaintiffs' claims relate not to defendants' conduct in the course of the state court foreclosure action, but, rather, to the validity of the underlying mortgage documents and defendants' standing to commence the foreclosure proceeding. Thus, "the injury complained of is the judgment permitting the foreclosure, which implicitly held that the mortgage[ ] w[as] valid." Webster v. Wells Fargo Bank, N.A., No. 08–civ–10145, 2009 WL 5178654, at *8 (S.D.N.Y. Dec. 23, 2009), aff'd sub nom. as amended (Jan. 24, 2012) Webster v. Penzetta, 458 F. App'x 23 (2d Cir. 2012) (finding the Court "plainly lack[ed] subject matter jurisdiction" over plaintiff's claims "attacking the validity of the foreclosure proceedings and the validity of the underlying mortgage loan documents" pursuant to *Rooker-Feldman* because "the injury complained of is the judgment permitting foreclosure, which implicitly held that the mortgages were valid."); see also Feliciano v. U.S. Bank Nat. Ass'n, No. 13–CV–5555, 2014 WL 2945798, at *2–4 & n. 7 (S.D.N.Y. June 27, 2014) (finding that plaintiffs' claims that "[defendant] wrongfully foreclosed upon their home because it lacked the legal capacity to accept the assignment of the underlying mortgage, and therefore lacked standing in the Foreclosure Action" failed under *Rooker-Feldman* and the fraud exception did not apply because "the complaint alleges fraudulent conduct (generally) by defendant prior to the institution of the Foreclosure Action rather than on the state court itself." (internal citations and

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

quotations omitted) ). Therefore, plaintiffs attempt to invoke a fraudulent procurement exception to the *Rooker–Feldman* doctrine fails.

7  Plaintiffs appear to allege newly discovered facts in relation to the alleged fraudulent closing of the mortgage in 2009. (Pls.' Opp to defendant Selene's Mot. to Dismiss, ECF No. 42-26 at 1.) Specifically, plaintiffs now argue, in conclusory fashion, that at the time of the closing of their mortgage in 2009, the Title Company was a "shell company" and the attorney at the closing table was fraudulent. (Id.)

**\*6** Accordingly, the Court lacks subject matter jurisdiction over plaintiffs' claims and the amended complaint should be dismissed in its entirety.

## C. *Res judicata*

Alternatively, to the extent the *Rooker-Feldman* doctrine does not deprive the Court of subject matter jurisdiction, all of plaintiffs' claims are barred by the doctrine of *res judicata.* Under the doctrine of *res judicata,* "a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action." Flaherty v. Lang, 199 F.3d 607, 612 (2d Cir. 1999) (quotation omitted). "In applying the doctrine of *res judicata,* [a court] must keep in mind that a state court judgment has the same preclusive effect in federal court as the judgment would have had in state court." Burka v. New York City Transit Auth., 32 F.3d 654, 657 (2d Cir. 1994). Further, federal courts must apply the doctrine of *res judicata* according to the rules of the state from which the judgment is taken. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Giardina v. Nassau Cnty., No. 08–CV–2007, 2010 WL 1850793, at *3 (E.D.N.Y. May 7, 2010). New York State courts apply a transactional analysis, "barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." Burka, 32 F.3d at 657 (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ); see Done, 2009 WL 2959619, at *3 (same).

*Res judicata* applies when there was: (1) a previous action that resulted in a final adjudication on the merits, (2) the party against whom *res judicata* is to be invoked was party to the previous action or in privity with a party to that action, and (3) the claims involved in the current case were, or could have been, raised in the previous action. Swiatkowski, 745 F. Supp. 2d at 171 (quoting Whelton v. Educ. Credit Mgmt.

Corp., 432 F.3d 150, 155 (2d Cir. 2005) ). *Res judicata* applies to defenses that could have been raised in the prior action as well. Waldman v. Vill. of Kiryas Joel, 39 F. Supp. 2d 370, 377 (S.D.N.Y. 1999) (*res judicata* "prevents a party from litigating any issue or defense that could have been raised or decided in a previous suit, even if the issue or defense was not actually raised or decided") (quoting Woods v. Dunlop Tire Corp., 972 F.2d 36, 38 (2d Cir. 1992) ); Robbins v. Growney, 229 A.D.2d 356, 645 N.Y.S.2d 791, 792 (N.Y. App. Div. [1st] Dep't 1996) ("The doctrine of *res judicata* is applicable ... to defenses raised in the prior action or which, though not raised, could have been.") (internal citation omitted). "All litigants, including *pro se* plaintiffs, are bound by the principles of *res judicata.* Done, 2009 WL 2959619, at *3.

Here, plaintiffs' claims are barred from further adjudication by *res judicata.* First, the judgment of foreclosure entered against plaintiffs is an adjudication on the merits, which prevents reconsideration of any claim that is based on the same facts as the foreclosure judgment and which would disturb LoanCare's (or Selene's) ability to enforce rights provided pursuant to the mortgage and the note securing the Bay Shore property. See id. at *4. Second, the facts pled by plaintiffs in their amended complaint—that LoanCare brought the foreclosure suit in the Suffolk County Supreme Court and was not the holder of a valid mortgage note at the time of assignment, (see Am. Compl.)—would have been central to deciding any entitlement to a judgment of foreclosure, and thus demonstrates that their claims in the current suit arise from the same transaction as LoanCare's claim in the previous foreclosure action. Done, 2009 WL 2959619, at *4. Plaintiffs' claims arising from the origination of the mortgage and attacking the ability of defendants to enforce it in the foreclosure proceedings, (see Am. Compl.), not only could have been raised as a defense to foreclosure in the state court, but were actually raised, (see Kossar Decl. Exs. I, J) and therefore cannot be relitigated in this Court. See, e.g., Hinds v. Option One Mortg. Corp., No. 11–CV–6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (report & recommendation), adopted by 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013) ("Inasmuch as Plaintiff's fraud claim is premised on his allegations that Defendants obtained the underlying mortgage through predatory lending tactics and fraud, *res judicata* operates to preclude federal review of such a claim ... [since the plaintiff's claims] arise from the same factual grouping—namely the validity of Plaintiff's mortgage, and the right of Defendants to enforce that agreement in a state court foreclosure proceeding"); Solomon v. Ocwen Loan Servicing, LLC, No. 12-CV-2856, 2013 WL 1715878, at *5

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

(E.D.N.Y. Apr. 12, 2013) ("The state-law claims asserted by plaintiff arise from the origination of the [m]ortgage and attack the ability of defendants to enforce it in the foreclosure proceedings. These claims could have been raised as a defense to foreclosure in state court, and therefore cannot be relitigated in a subsequent suit in federal court."); Swiatkowski, 745 F. Supp. 2d at 171 ("Many of the factual allegations plaintiff raises in opposition to the instant motion to dismiss involve issues that could have been raised as claims or defenses in the state court [foreclosure] proceedings."); Gray v. Americredit Fin. Servs., Inc., No. 07 Civ. 4039, 2009 WL 1787710, at *6 n. 2 (S.D.N.Y. June 23, 2009) ("Plaintiff's allegations of fraud regarding the underlying loan transaction do not appear to be of the type recognized by certain courts as immune from res judicata."); Yeiser v. GMAC Mortg. Corp., 535 F.Supp.2d 413, 421 (S.D.N.Y. 2008) ("According to New York law, ... res judicata ... applies to defenses that could have been litigated, including defenses to a foreclosure.").

**\*7** Whether cast as violations of RESPA, or regulations governing the National Housing Act, plaintiffs effectively allege that defendants improperly obtained the foreclosure judgment due to lack of standing based on fraud or "fraud in the inducement". (See Am. Compl.) However, plaintiffs asserted these claims, *albeit* in different form, in the state foreclosure action as affirmative defenses in their verified answer, in their opposition to LoanCare's summary judgment motion, and in support of their own cross motion for summary judgment. (Kossar Decl. Exs. I, J.) Specifically, in the state action, plaintiffs alleged that LoanCare had no standing to bring a foreclosure action, had "unclean hands," and misled, overcharged and defrauded plaintiffs in the mortgage application, closing and servicing process. (Id., Ex. I at ¶¶ 3, 8, 14, 18) The state court considered and ultimately dismissed plaintiffs' affirmative defenses and denied plaintiffs' summary judgment; instead, granting summary judgment in LoanCare's favor. (Kossar Decl. Ex. J.) "If plaintiffs were unhappy with the result of that proceeding, the proper recourse was a state court appeal. Because plaintiffs could have presented the same claims they now assert, including the RESPA claim, as defenses or counterclaims in the action for foreclosure, the doctrine of *res judicata* bars this litigation." Yeiser, 535 F. Supp. 2d at 422 (citing 12 U.S.C. § 2614, which authorizes an action, pursuant to the provisions of RESPA, to be brought in the federal district court or in any other court of competent jurisdiction in which the property involved is located, or where the violation is alleged to have occurred); Mercado v. Playa Realty Corp., No. CV 03-3427, 2005 WL 1594306, at *7 (E.D.N.Y. July 7, 2005) (determining that because plaintiff

could have asserted the new claims she was raising in her federal action during the foreclosure action as counterclaims and the relief sought by plaintiff was inconsistent with the ruling in the foreclosure action, the new claims were barred by the doctrine of *res judicata*). [8]

[8]    "Although New York's permissive counterclaim rule means that res judicata generally will not necessarily bar claims that could have been counterclaims in a prior action, this exception for counterclaims does not permit an attack on a judgment" previously issued by the state court. Beckford v. Citibank N.A., No. 00 Civ. 205, 2000 WL 1585684, at *3 (S.D.N.Y. Oct. 24, 2000) (internal quotation omitted).

Lastly, the present action satisfies the privity requirement for claim preclusion since LoanCare commenced the foreclosure proceeding and is a named party to the current action. Further, Selene, a non-party to the earlier state court action may still invoke claim preclusion if it can demonstrate that it was in privity with a party to the earlier action. See Houdet v. U.S. Tennis Ass'n, No. 13-CV-5131, 2014 WL 6804109, at *4 (E.D.N.Y. Dec. 3, 2014) (finding *res judicata* to apply "not just to the parties in a prior litigation but also to those in privity with them" where the "new defendants have a sufficiently close relationship to justify [its] application" (internal quotation marks omitted) ). "A relationship of privity 'includes those who are successors to a property interest, those who control an action although not formal parties to it, [and] those whose interests are represented by a party to the action.' " Modular Devices, Inc. v. Alcatel Alenia Space Espana, No. 08-CV-1441, 2010 WL 3236779, at *4 (E.D.N.Y. Aug. 12, 2010) (quoting Ferris v. Cuevas, 118 F.3d 122, 126 (2d Cir. 1997) ). Under New York law, both the party servicing the mortgage and the party that later acquires it (becoming a successor in interest) are considered to be in privity with the party to the original action concerning the mortgage for purposes of *res judicata*. Yeiser, 535 F. Supp. 2d at 423.

The facts alleged in the amended complaint establish privity between Selene and LoanCare, as LoanCare assigned the mortgage to Selene on March 31, 2015—after final judgment in the state foreclosure action. See Yeiser, 535 F. Supp. 2d at 423 ("[s]ince the loan was transferred to GRP in May 2005," almost one year after the state foreclosure action, "GRP is a successor to that interest and is also in privity with [the original note holder]," which was the plaintiff in

Talley v. LoanCare Servicing, Div. of FNF, Not Reported in Fed. Supp. (2018)

2018 WL 4185705

the foreclosure litigation); Hinds, 2012 WL 6827477, at *4 n.8 (finding the privity requirement satisfied where Wells Fargo was not a party in the state court proceeding, but bought the subject property at a foreclosure sale, rendering it a successor in interest). Thus, the requirements of *res judicata* are satisfied here.

Therefore, to the extent *Rooker-Feldman* does not deprive this Court of subject matter jurisdiction over plaintiffs' claims, the claims are barred by the doctrine of *res judicata* and must be dismissed.

## D. Collateral Estoppel

Plaintiffs' claims are also precluded under the narrower doctrine of collateral estoppel. "Collateral estoppel, or issue preclusion, 'precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). Whether relitigation of an issue is precluded is determined by the rules of the court that rendered the prior judgment. Id. "Under New York law, the doctrine of collateral estoppel requires that 'the issue in the second action [be] identical to an issue which was raised, necessarily decided and material in the first action.' " Hines v. HSBC Bank USA, No. 15-CV-3082, 2016 WL 5716749, at *9 (E.D.N.Y. Sept. 30, 2016) (quoting Parker v. Blauvelt Volunteer Fire Co., 93 N.Y.2d 343, 349 (1999) ). Thus, "[b]efore collateral estoppel can be invoked, the court must find that an identical issue was necessarily decided in the prior action and is decisive of the present action, and that there was a full and fair opportunity to contest the decision now said to be controlling." Yeiser, 535 F. Supp. 2d at 424 (internal citation omitted).

**\*8** "To determine whether the issue in the first litigation was necessarily decided, the focus is on the rights, questions or facts that underlie a judicial decision, not the legal theories underlying the complaint." Id. at 424-25 (citing Coveal v. Consumer Home Mortgage, Inc., 2005 WL 2708388, at *5 (E.D.N.Y. Oct. 21, 2005) ) "New York requires only that the issue have been properly raised by the pleadings or otherwise placed in issue and actually determined in the prior proceeding." Id. (finding collateral estoppel to be applicable where all the facts giving rise to the amended complaint were presented in the foreclosure proceeding even though plaintiffs did not allege all of the same causes of action).

Here, plaintiffs had a full and fair opportunity to litigate the factual issues raised in the amended complaint in the state foreclosure action. And, those issues were decided in LoanCare's favor. As discussed *supra*, plaintiffs already challenged the validity of the assignment of the mortgage to LoanCare and its standing to foreclose on the Bay Shore property in state court, and the state court necessarily rejected those arguments when it found LoanCare had a valid claim to the Bay Shore property and entered judgment of foreclosure on that property. No appeal was filed in that action. Accordingly, plaintiffs cannot relitigate these issues against defendant LoanCare in federal court. See Graham v. Select Portfolio Servicing, Inc., 156 F. Supp. 3d 491, 505–06 (S.D.N.Y. 2016).

Plaintiffs are also precluded from litigating these same issues against Selene, despite the fact that Selene was not a party to the initial suit in state court. See Jasper v. Sony Music Entm't, Inc., 378 F. Supp. 2d 334, 343 (S.D.N.Y. 2005) ("By binding the plaintiff to earlier judicial decisions in which he was a party, defensive collateral estoppel precludes a plaintiff from getting a second bite at the apple merely by choosing a new adversary."); see also Fequiere v. Tribeca Lending, No. 14-CV-812, 2016 WL 1057000, at *9–10 (E.D.N.Y. Mar. 11, 2016) (applying defensive non-mutual collateral estoppel to FDCPA claim).

Accordingly, the Court grants defendants' motions to dismiss plaintiffs' claims because they are precluded pursuant to the doctrine of collateral estoppel.[9]

[9]      Because plaintiffs' claims fail under *Rooker-Feldman, res judicata* and collateral estoppel, the Court need not reach the defendants' alternative arguments in support of dismissal.

## E. Sanctions

Pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Rule 11"), defendant LoanCare seeks to impose sanctions on plaintiffs in the form of attorneys' fees incurred in defendant's defense of the instant action. (Def. LoanCare's Mot. to Dismiss, ECF No. 39-7 at 19-20.) For the reasons discussed below, defendant's motion is denied.

As an initial matter, the Court notes that LoanCare has not satisfied the procedural requirements for filing a sanctions motion. Rule 11 requires that a motion for sanctions "be made separately from any other motion and ... describe the specific conduct that allegedly violates Rule 11(b)." Fed. R.

Civ. P. 11(c)(2). In any event, the Court denies LoanCare's motion for sanctions. Plaintiffs' claims against defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as plaintiff is proceeding *pro se.* Although Rule 11 does apply to *pro se* litigants, the court may take into account the "special circumstances of litigants who are untutored in the law," Maduakolam v. Columbia Univ., 866 F.2d 53, 56 (2d Cir. 1989), as well as whether such a litigant has been warned of the possible imposition of sanctions. See Kuntz v. Pardo, 160 B.R. 35, 40 (S.D.N.Y. 1993); see also Fed. R. Civ. P. 11 advisory committee's note to the 1993 amendments (stating that the court should consider, *inter alia*, whether the motion was made in bad faith). There are no facts indicating that plaintiff instituted or maintained this lawsuit in bad faith or that they were warned of the imposition of sanctions. For all of the above reasons, LoanCare's request for sanctions is denied.

#### F. Leave to Amend

**\*9** *Pro se* plaintiffs are ordinarily given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Shomo v. City of New York, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation omitted). Nevertheless, "a district court may deny a *pro se* plaintiff leave to amend when amendment would be futile." Boddie v. N.Y. State Div. of Parole, No. 08-CV-911, 2009 WL 1033786, at \*5 (E.D.N.Y. Apr. 17, 2009).

Here, the Court has carefully considered whether plaintiffs should be granted leave to amend the complaint. Having decided plaintiffs' claims are barred by *Rooker-Feldman, res judicata* and collateral estoppel, the Court finds that any amendment of these claims would be futile. For these reasons, the Court declines to grant plaintiffs leave to amend.

### III. CONCLUSION

For the reasons stated above, the Court grants defendants' motions and dismisses plaintiffs' amended complaint in its entirety. The Clerk of Court is directed to close this case and send a copy of this Order to *pro se* plaintiffs.

**SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2018 WL 4185705

---

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 19236195
Only the Westlaw citation is currently available.
United States District Court, E.D. North Carolina,
Southern Division.

Kathy Juanita REAVES, Plaintiff,

v.

Angela FAULKNER, et al., Defendants.

No. 7:22-CV-40-FL
|
Signed October 12, 2022

**Attorneys and Law Firms**

Kathy Juanita Reaves, Mullins, SC, Pro Se.

ORDER AND MEMORANDUM
AND RECOMMENDATION

Robert B. Jones, Jr., United States Magistrate Judge

**\*1** This matter is before the court on Plaintiffs amended application to proceed *in forma pauperis*, [DE-10], and for frivolity review of the complaint, [DE-1-1], pursuant to 28 U.S.C. § 1915(e)(2)(B). Plaintiff has demonstrated appropriate evidence of inability to pay the required court costs, and the application to proceed *in forma pauperis* is allowed. However, it is recommended that the complaint be dismissed.

**I. Standard of Review**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court shall dismiss the complaint if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2)(B)(i–iii); *see Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994) (explaining Congress enacted predecessor statute 28 U.S.C. § 1915(d) "to prevent abuse of the judicial system by parties who bear none of the ordinary financial disincentives to filing meritless claims"). A case is frivolous if it lacks an arguable basis in either law or fact. *See Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *McLean v. United States*, 566 F.3d 391, 399 (4th Cir. 2009) ("Examples of frivolous claims include those whose factual allegations are 'so nutty,' 'delusional,' or 'wholly fanciful' as to be simply 'unbelievable.' "). A claim lacks an

arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 327, 109 S.Ct. 1827. A claim lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Id.* at 327–28, 109 S.Ct. 1827.

In order to state a claim on which relief may be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. While a complaint need not contain detailed factual allegations, the plaintiff must allege more than labels and conclusions. *Id.*

In the present case, Plaintiff is proceeding *pro se*, and pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). This court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Noble v. Barnett*, 24 F.3d 582, 587 n.6 (4th Cir. 1994). However, the principles requiring generous construction of *pro se* complaints are not without limits; the district courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**II. Discussion**

Plaintiff alleges she was employed as a CTE (career and technical education) teacher at Townsend Middle School in Maxton, Robeson County, North Carolina. Her claims arise from an incident that took place on December 6, 2021, when Plaintiff filed a grievance against defendant Freddie Williamson, the Superintendent for the Robeson County Public Schools, for allegedly backdating her employment contract without informing her. On December 10, 2021, Williamson had Plaintiff's work email blocked, and she was unable login and access the CTE curriculum and standards. On January 28, 2022, Plaintiff asked Defendant Catherine Truitt, the State Superintendent of North Carolina Public Schools, to assist her in accessing the CTE curriculum but Truitt responded that she would not intervene. Plaintiff asserts that, as a result of her inability to access her work email,

her seventy-two CTE students were denied access to the CTE curriculum from December 10, 2021 through March 1, 2022, and the Board of Education conducted meetings during this time but failed to address her grievances. Plaintiff also alleges that Angela Faulkner, the principal at Townsend Middle School, fraudulently entered grades for Plaintiff's CTE students in January 2022, despite the students being denied education, and Plaintiff reported the matter to the CTE coordinator, CTE director, and Truitt but they failed to investigate or intervene. Plaintiff contends Defendants received state and federal money for these students to be educated but students were not educated during this time period, and no Defendant intervened to remediate the discriminatory denial of education to Plaintiff's students or reported the denial of education as required under federal and state law. On March 3, Plaintiff was suspended with pay for ninety days in what she believes was a legal maneuver to remove her from the school premises pending prior litigation she filed in federal court for discrimination and retaliation. Compl. [DE-1-1] at 2–7. [1]

[1]   The page number referenced is that assigned by CM/ECF, whereas here it differs from the document's internal page number.

**\*2** Plaintiff brings this action against Angela Faulkner, Freddie Williamson, Michael Mike Smith, Brenda Fairley-Ferebee, Herman Locklear, Demetria Grissett, Atkins Trey Michael, the Public Schools of Robeson County, the Public Schools of Robeson County Board of Education, Catherine Truitt, Roy Cooper, the Public Schools of North Carolina, the North Carolina Department of Public Instruction, the North Carolina State Board of Education, and the State of North Carolina. Plaintiff asserts Defendants violated 18 U.S.C. § 371, Title I of the Elementary and Secondary Education Act, the Every Student Succeeds Act ("ESSA"), Chapter 115C of the North Carolina General Statutes for Elementary and Secondary Education, the North Carolina State Tort Claims Act, 20 U.S.C. Chapters 39 and 44, the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution, Title VII of the Civil Rights Act of 1964, the North Carolina Retaliatory Employment Discrimination Act ("REDA"), and she also asserts claims under state law for interference with contractual obligations, negligent hiring and retention, and abuse of power/bullying or intentional infliction of emotional distress. Plaintiff seeks monetary damages for herself and on behalf of her CTE students. *Id.* at 1–2, 23–49.

**1. Claims on Behalf of Plaintiff's CTE Students**

Plaintiff asserts in her complaint that this case is not about her but about the treatment of her CTE students, and she claims that her CTE students were damaged as a result of Defendants' wrongful acts. *Id.* at 3, 24, 26, 33, 38, 42–45, 47–50.

To the extent Plaintiff seeks to bring claims on behalf of her students, Plaintiff lacks standing to do so because she proceeds in this matter unrepresented by counsel and, therefore, can only assert claims on her own behalf. *See Myers v. Louden Cnty. Pub. Schs.*, 418 F.3d 395, 400 (4th Cir. 2005) ("The right to litigate for oneself ... does not create a coordinate right to litigate for others.") (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) (per curiam)). Accordingly, any claims brought on behalf of Plaintiff's students should be dismissed.

**2. Conspiracy to Defraud the United States – 18 U.S.C. § 371**

Plaintiff contends that Defendants Williamson and Faulkner failed to report that Townsend Middle School was not in compliance with federal law and that Plaintiff's CTE students were discriminated against and denied CTE education, despite the Robeson County schools continuing receipt of Title I, ESSA, and Covid-19 funding, all in an attempt to defraud the federal government. Compl. [DE-1-1] at 23–24.

The conspiracy statute under which Plaintiff attempts to assert a claim is criminal in nature and does not provide for a civil private right of action. *See Hankins v. United States*, No. 7:20-CV-179-FL, 2021 WL 4437502, at \*5 (E.D.N.C. Aug. 30, 2021) (recommending on frivolity review that a claim under 18 U.S.C. § 371 be dismissed because the statute does not provide for a civil private cause of action), *report and recommendation adopted*, 2021 WL 4428192 (E.D.N.C. Sept. 27, 2021); *see also Tribble v. Reedy*, 888 F.2d 1387, 1989 WL 126783 (4th Cir. 1989) (per curiam) ("Unless there is a clear Congressional intent to provide a civil remedy, a plaintiff cannot recover civil damages for an alleged violation of a criminal statute."); *Dingle v. Baggett*, No. 5:19-CV-00425-D, 2020 WL 5245986, at \*5 (E.D.N.C. July 31, 2020) ("[C]riminal statutes 'proscribe crimes; they do not, of themselves, create civil liability.' ") (quoting *Kebort v. Stiehl*, No. 5:17-CV-418-D, 2018 WL 2927762, at \*3 (E.D.N.C. May 17, 2018)), *objections overruled*, 2020 WL 5217393 (E.D.N.C. Sept. 1, 2020), *aff'd*, 860 F. App'x 41 (4th Cir. 2021). Accordingly, this claim should be dismissed.

### 3. Failure to Report – Title I and ESSA

Plaintiff alleges Defendants Public Schools of Robeson County, Freddie Williamson, and Angela Faulkner failed to provide the parents of Plaintiff's CTE students a true accounting of the events between December 10, 2021 and February 28, 2022, as required by Title I parent liaison reporting and ESSA, and therefore denied parents the opportunity to mitigate the problem or move their children to another resource. Compl. [DE-1-1] at 25–26, 43–44. Plaintiff further alleges that the Public Schools of Robeson County did not refund any of the federal or state funding it received for the CTE students during the time period at issue. *Id.* at 25. Throughout Plaintiff's complaint she also alleges that Defendants violated ESSA reporting requirements, 20 U.S.C. § 6301, *et seq.* Courts have concluded that there is no private right of action under Title I of the Elementary and Secondary Education Act of 1965. *See, e.g., Bradford v. Morehouse Par. Sch. Bd.*, No. CV 18-1536, 2019 WL 572981, at *5 (W.D. La. Jan. 28, 2019) (citing *Chester Upland Sch. Dist. v. Pennsylvania*, No. 12-132, 2012 WL 1344368, at *7 (E.D. Pa. Apr. 17, 2012); *Scott v. Conley*, No. 15-0371, 2016 WL 4257507, at *2 (D. Utah July 18, 2016), *report and recommendation adopted*, 2016 WL 4257339 (D. Utah Aug. 11, 2016)), *report and recommendation adopted*, No. 2019 WL 576007 (W.D. La. Feb. 12, 2019). Likewise, the ESSA, which amended the No Child Left Behind Act, *Dickerson v. D.C.*, No. CV 09-2213 (PLF), 2022 WL 656172, at *1 (D.D.C. Mar. 3, 2022), provides no private right of action. *See Simmons v. Putnam/N. Westchester Bd. of Coop. Educ. Servs.*, No. 19 CV 10388 (VB), 2022 WL 294753, at *2 (S.D.N.Y. Feb. 1, 2022) (noting the No Child Left Behind Act "does not contemplate a private right of action.") (citing *Horne v. Flores*, 557 U.S. 433, 456 n.6, 129 S.Ct. 2579, 174 L.Ed.2d 406 (2009)); *A. W. v. Tennessee Dep't of Educ.*, No. 3:20-CV-76, 2021 WL 6246563, at *8 n.6 (E.D. Tenn. Apr. 14, 2021) (noting the plaintiffs provided no case precedent or support for the proposition that ESSA provides a private right of action). Accordingly, these claims should be dismissed.

### 4. N.C. Gen. Stat. §§ 115C-276(e), 115C-288(b) and 115C-307

**\*3** Plaintiff contends Defendants Faulkner and Williamson violated N.C. Gen. Stat. §§ 115C-276(e), 115C-288(b), and 115C-307 by failing to make accurate reports to the Superintendent and Board of Education regarding the events surrounding Plaintiffs CTE students between December 10, 2021 and February 28, 2022, failing to recommend the return of federal funding for the CTE students and preventing her

from performing her job duties by blocking her email. Compl. [DE-1-1] at 27, 38–40.

Section 115C-276(e) provides that a local superintendent has a duty to "furnish as promptly as possible to the State Superintendent when requested by him, information and statistics on any phase of the school work in his administrative unit." N.C. Gen. Stat. § 115C-276(e). Section 115C-288(b) outlines the powers and duties of school principals, including the duty to make accurate reports to the superintendent and local school board on certain matters and the penalties for making false reports. *Id.* § 115C-288(b). Section 115C-307 outlines the duties of teachers, including a duty to teach students "as thoroughly as they are able," and contains reporting requirements similar to those of principals. *Id.* § 115C-307. None of these statutes expressly provide for a private right of action, and North Carolina "case law generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Lea v. Grier*, 156 N.C. App. 503, 508, 577 S.E.2d 411, 415 (2003) (quoting *Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 339, 511 S.E.2d 41, 44 (1999)); *Benjamin v. Sparks*, 173 F. Supp.2d 272, 291 (E.D.N.C. 2016) (citing *Lea*). Accordingly, these claims should be dismissed.

### 5. North Carolina Tort Claims Act

Plaintiff asserts Defendants violated the North Carolina Tort Claims Act by concealing and failing to report the discrimination against and denial of education to her CTE students and intentionally inflicting emotional distress on her by failing to intervene. Compl. [DE-1-1] at 26–27.

"Under the North Carolina Tort Claims Act ..., the Industrial Commission has exclusive jurisdiction over claims against the State, state departments, institutions, and agencies for personal injuries or damages sustained by any person due to the negligence of [a] state officer, agent, or employee acting within the scope of his employment." *Carmona v. North Carolina*, No. 3:21-CV-00211-MR, 2021 WL 2295517, at *1 (W.D.N.C. May 26, 2021) (citing *Guthrie v. State Ports Authority*, 307 N.C. 522, 299 S.E.2d 618 (1983)). Furthermore, Plaintiff asserts a claim of intentional infliction of emotional distress rather than negligent conduct. *See Vincent v. N. C. Dep't of Trans.*, No. 1:20-CV-51, 2020 WL 5710710, at *11 (M.D.N.C. Sept. 24, 2020) (concluding intentional infliction of emotional distress is an intentional tort) (citing *Dickens v. Puryear*, 302 N.C. 437, 452–53, 276 S.E.2d 325 (1981)). "The Act ... does not give the

Industrial Commission jurisdiction to award damages based on intentional acts," and "[a]s such, injuries intentionally inflicted by employees of a state agency are not compensable under the Act." *Id.* at *2 (citing *Frazier v. Murray*, 135 N.C.App. 43, 519 S.E.2d 525, 528 (N.C. App. 1999)); *see also Reaves v. Brooks Pierce - Greensboro*, No. 7:22-CV-53-FL, 2022 WL 2374621, at *1 (E.D.N.C. June 30, 2022) (concluding plaintiffs claims under the North Carolina Tort Claims Act "fail given the forum in which it was brought and the intentional nature of the wrongs she alleges.") (citing *White v. Trew*, 366 N.C. 360, 363, 736 S.E.2d 166 (2013) (explaining that "intentional acts of [state employees] are not compensable" under the Tort Claims Act)). Accordingly, Plaintiff's claims under the North Carolina Tort Claims Act should be dismissed.

### 6. 20 U.S.C. Chapter 39 – Equal Educational Opportunities and Transportation of Students

**\*4** Plaintiff alleges that during the 2021–22 school year, there was no certified math teacher at Townsend Middle School and Defendants failed to provide the students with basic math skills. Compl. [DE-1-1] at 33–34. Plaintiff also alleges that Defendants violated 20 C.F.R. § 1703 and "20 CFR 39," which appears to be a reference to Chapter 39 and more specifically the Equal Educational Opportunity Act, 20 U.S.C. § 1701, *et seq.*, by denying students equal educational opportunity. *Id.* at 3, 6, 9–10, 19–20.

Section 1703 prohibits a state from denying equal educational opportunity to an individual on account of race, color, sex, or national origin by (a) segregating students on the basis of race, color, or national origin, (b) failing to remove the vestiges of a dual school system, (c) assigning students to certain schools in a discriminatory manner, (d) discriminating against faculty and staff on the basis of race, color, or national origin in employment, employment conditions, and school assignment, (e) transferring students for purposes of segregation based on race, color, or national origin, and (f) failing to take action to overcome language barriers that impede equal participation by students. 20 U.S.C. § 1703. Plaintiff's complaint, liberally construed, contains no allegations to support a plausible inference that the conduct of which Plaintiff complains had anything to do with race, color, sex, or national origin. Furthermore, it appears Plaintiff is attempting to assert claims on behalf of students, which she may not do. *See Myers*, 418 F.3d at 400. Accordingly, it is recommended that these claims be dismissed.

### 7. 20 U.S.C. Chapter 44 – Career and Technical Education

Plaintiff alleges she was not provided a CTE Teacher Mentor; she never met Defendants Demetria Grissett, the CTE Coordinator for the Public Schools of Robeson County, or Trey Michael, the CTE Director for the North Carolina Public Schools; she only saw Defendant Williamson on the day he suspended her with pay for ninety days; her students were denied CTE education pursuant to 20 U.S.C. Chapter 44 during the time her work email was blocked; and all Defendants are in violation of Chapter 44. Compl. [DE-1-1] at 27–33, 38–39.

The purpose of Chapter 44, 20 U.S.C. §§ 2301–2414, is "to develop more fully the academic knowledge and technical and employability skills of secondary education students and postsecondary education students who elect to enroll in career and technical education programs and programs of study." 20 U.S.C. § 2301. Plaintiff fails to point to a specific provision of Chapter 44 that she claims Defendants violated, and it appears from Plaintiff's allegations that the asserted harm is to the CTE students rather than any harm personal to Plaintiff. As explained above, Plaintiff may not bring claims on behalf of her students. *See Myers*, 418 F.3d at 400. Accordingly, these claims should be dismissed.

### 8. Due Process

Plaintiff alleges a violation of her Fourteenth Amendment procedural due process rights, which the court construes as a claim under 42 U.S.C. § 1983, based on Defendant Faulkner's attempt to conduct a teacher evaluation of Plaintiff between March 1 and 3, 2022, without having provided Plaintiff with any training pursuant to the employment contract, and Plaintiffs suspension with pay on March 3, 2022. Compl. [DE-1-1] at 40–42.

To state a procedural due process claim, a plaintiff must allege "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 145 (4th Cir. 2009). The Supreme Court in *Zinermon v. Burch*, explained the relevance of state remedies to a § 1983 claim for violation of procedural due process:

> **\*5** A § 1983 action may be brought for a violation of procedural due process, but here the existence of state

remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law. Parratt,* 451 U.S. at 537, 101 S. Ct. at 1913; *Carey v. Piphus,* 435 U.S. 247, 259, 98 S. Ct. 1042, 1050, 55 L.Ed.2d 252 (1978) ("Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property"). The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process. Therefore, to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law.

494 U.S. 113, 125–26, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990).

First, Plaintiff has not plausibly alleged that Faulkner's attempt to evaluate her deprived her of any liberty or property interest. Second, assuming Plaintiff has a property interest in her employment, she has not plausibly alleged that her suspension with pay constituted a procedural due process violation. Under North Carolina law, the superintendent may, under certain circumstances, suspend a teacher with pay for a reasonable period of time, not to exceed ninety days. N.C. Gen. Stat. § 115C-325.5(c). If the superintendent does not initiate dismissal or demotion proceedings against the teacher within the ninety-day period, the teacher must be reinstated immediately. *Id.* There are notice and hearing procedures regarding the dismissal or demotion of a teacher for cause set forth in N.C. Gen. Stat. § 115C-325.6.

Plaintiff's complaint alleges that she was suspended with pay for ninety days on March 3, 2022. Compl. [DE-1-1] at 3, 41–42. Plaintiff filed her complaint on March 11, 2022, prior to the end of the ninety-day period, and there is no allegation that any dismissal or demotion proceedings had been initiated against her by the superintendent. Thus, under North Carolina state law, Plaintiff was not yet due a hearing. Because an actionable constitutional violation "is not complete unless and until the State fails to provide due process," *Zinermon,* 494 U.S. at 126, 110 S.Ct. 975, Plaintiff has failed to state a claim for violation of her due process rights. *See Gilreath*

*v. Cumberland Cnty. Bd. of Educ.,* 253 N.C. App. 238, 798 S.E.2d 438 (2017) (dismissing a teacher's federal procedural due process claim and finding "[t]he statutory scheme set out in N.C. Gen. Stat. § 115C-325 provided Plaintiff with all of the procedural due process to which he was constitutionally entitled," and the plaintiff failed to take advantage of the process afforded to him). Accordingly, it is recommended that Plaintiff's due process claim be dismissed.

### 9. Equal Protection

Plaintiff alleges that her students were discriminated against and segregated from learning the CTE curriculum when her email address was blocked and her access to the CTE curriculum was denied, and no other North Carolina Public School students were denied the CTE curriculum. Compl. [DE-1-1] at 43.

The Equal Protection Clause provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir. 2001). A plaintiff must set forth "specific, non-conclusory factual allegations that establish improper motive." *Williams v. Hansen,* 326 F.3d 569, 584 (4th Cir. 2003) (quoting *Trulock v. Freeh,* 275 F.3d 391, 405 (4th Cir. 2001)) (internal quotations omitted). Plaintiff has failed to state any facts in her complaint from which the court could infer the alleged unequal treatment resulted from an improper motive or purposeful discrimination and, thus, has failed to state an equal protection claim. *See Harris v. Unit Manager Avcook,* No. 5:15-CT-3261-D, 2016 WL 2931630, at *3 (E.D.N.C. Apr. 11, 2016) (finding failure to set forth "specific, non-conclusory factual allegations" that establish an improper motive warranted dismissal of equal protection claim on frivolity review), *report and recommendation adopted sub nom. Harris v. Avcook,* 2016 WL 2917412 (E.D.N.C. May 18, 2016). Accordingly, it is recommended that this claim be dismissed.

### 10. Title VII

**\*6** Plaintiff alleges Defendants violated Title VII of the Civil Rights Act of 1964 by discriminating against her and her students through the denial of CTE education and her suspension. Compl. [DE-1-1] at 47–48.

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise ... discrimin[ating] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...." *42 U.S.C.A § 2000e-2(a)*. A plaintiff is required to exhaust her administrative remedies by bringing a charge with the Equal Employment Opportunity Commission ("EEOC") before filing suit. *See Walton v. Harker*, 33 F.4th 165 (4th Cir. 2022) (citing *42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d)*). "The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962–63 (4th Cir. 1996) (citing *King v. Seaboard Coast Line R.R.*, 538 F.2d 581, 583 (4th Cir. 1976)). While the charge-filing requirement is not jurisdictional, i.e., it can be forfeited if not timely raised, the requirement is mandatory. *See Fort Bend Cnty., Texas v. Davis*, —— U.S. ——, 139 S. Ct. 1843, 1849-51, 204 L.Ed.2d 116 (2019); *Rios v. City of Raleigh*, No. 5:19-CV-00532-M, 2020 WL 5603923, at *7 (E.D.N.C. Sept. 18, 2020). The court may consider affirmative defenses *sua sponte* when a litigant seeks to proceed *in forma pauperis*. *See Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 (4th Cir. 2006) (citing *Nasim v. Warden, Md. House of Correction*, 64 F.3d 951, 953–54 (4th Cir. 1995)). Plaintiff has not alleged that she exhausted her administrative remedies by filing a charge with the EEOC prior to bringing this action. *See Francisco Ramos v. Def. Commissary Agency*, No. 5:18-CV-380-BO, 2020 WL 1165282, at *1 (E.D.N.C. Mar. 9, 2020) (dismissing Title VII claim where plaintiff did not file a charge with the EEOC), *aff'd*, 822 F. App'x 217 (4th Cir. 2020). Accordingly, Plaintiff's Title VII claim should be dismissed for failure to exhaust administrative remedies.

Alternatively, Plaintiff has failed to plausibly allege that she was discriminated against because of her race or other protected characteristic in violation of Title VII. There are no allegations in the complaint that constitute direct evidence of discrimination. "Absent direct evidence [of discrimination], the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)), *aff'd*, 566 U.S. 30, 132 S.Ct. 1327, 182 L.Ed.2d 296 (2012). "Although an employee need not prove a prima facie case of discrimination to survive a motion to dismiss, he must state a plausible right to relief." *Ofoche v. Apogee Med. Grp., Va., P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020) (citing *Woods v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017)). To state a plausible claim, the complaint must contain allegations from which the court could find that defendant took adverse employment action against plaintiff because of a protected characteristic. *See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015).

**\*7** Plaintiff alleges generally that discrimination took place but makes no factual allegations from which the court could draw a plausible inference that any adverse action was taken against her *because of* her race or other protected characteristic. *See Persaud v. Morgan State Univ.*, 34 F.3d 1066, 1994 WL 446797, at *2 (4th Cir. 1994) ("Conclusory allegations of discrimination are insufficient to state a claim.") (citing *Simpson v. Welch*, 900 F.2d 33, 35 (4th Cir. 1990)). As for Plaintiff's claims on behalf of students, Plaintiff may not bring such claims. *See Myers*, 418 F.3d at 400. Accordingly, it is recommended that these claims be dismissed.

### 11. REDA

Plaintiff alleges that she filed a REDA complaint and "on March 3, 2022 the NCDOL found probable cause to move forward with a retaliatory complaint against defendants Public Schools of Robeson County and defendant Freddie Williamson pursuant to REDA Retaliation." Compl. [DE-1-1] at 20. However, Plaintiff does not allege that her administrative remedies have been exhausted, i.e., that she has received a right to sue letter, which is a prerequisite to bringing a REDA claim in federal court. *See Krings v. AVL Techs.*, No. 1:20-CV-259-MR-WCM, 2021 WL 1235129, at *5 (W.D.N.C. Feb. 10, 2021) ("[A] REDA claim requires a plaintiff to first obtain a right-to-sue letter.") (citing *Whitfield v. DLP Wilson Med. Ctr., LLC*, 482 F. Supp. 3d 485, 496 (E.D.N.C. 2020) ("Before filing a lawsuit under REDA, plaintiff must file a complaint with the North Carolina Commissioner of Labor, obtain a right-to-sue letter from the Commissioner, and file suit within 90 days of receiving that letter. These claim processing rules are mandatory under North Carolina law.")), *report and recommendation adopted*, 2021 WL 1233478 (W.D.N.C. Apr. 1, 2021); *Satterwhite v. Wal-Mart Stores E., L.P.*, No. 5:11-CV-363-BO, 2012 WL 255347, at *3 (E.D.N.C. Jan. 26, 2012) (stating that "[i]n order to bring a civil complaint under REDA, a plaintiff must first file a complaint with the [NCDOL]

within 180 days of the alleged violation and receive a right-to-sue-letter."). Accordingly, it is recommended that Plaintiff's REDA claim be dismissed for failure to exhaust her administrative remedies.

### 12. State Law Tort Claims

Plaintiff alleges Defendants interfered with her contractual obligations and subjected her to bullying and intentional infliction of emotional distress, and she also alleges negligent hiring and retention and vicarious liability. Compl. [DE-1-1] at 27, 44–46. These are state law tort claims. *See Parks v. N.C. Dep't of Pub. Safety*, No. 5:13-CV-74-BR, 2014 WL 32064, at *5 (E.D.N.C. Jan. 6, 2014) (concluding plaintiff's claim for tortious interference with contractual or prospective business relations was an intentional one) (citing *Blue Ridge Pub. Safety, Inc. v. Ashe*, 712 F. Supp. 2d 440, 447–48 (W.D.N.C. 2010)) (under North Carolina law, tortious interference with contract and tortious interference with prospective economic advantage are intentional torts); Charles E. Daye & Mark W. Morris, *North Carolina Law of Torts* §§ 14.10-14.60 (2d ed. 1999); *Taylor v. Fed. Express Corp.*, No. 5:19-CV-101-FL, 2021 WL 5985122, at *5 (E.D.N.C. Dec. 16, 2021) (recognizing intentional infliction of emotional distress is a state law claim); *White v. Pitt Cnty. Sch.*, No. 4:17-CV-00075-BR, 2018 WL 1020123, at *3 (E.D.N.C. Feb. 22, 2018) (considering claims for bullying and harassment as state law tort claims); *A.G. v. Fattaleh*, No. 5:20-CV-00165-KDB-DCK, 2022 WL 2758607, at *17 (W.D.N.C. July 14, 2022) (characterizing negligent hiring and supervision and vicarious liability as state law claims). The court should decline to exercise jurisdiction over these state law claims where Plaintiff has failed to state a federal claim. 28 U.S.C. § 1367 (providing that a court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction"); *Chesapeake Ranch Water Co. v. Bd. of Comm'rs of Calvert Cnty.*, 401 F.3d 274, 277 (4th Cir. 2005) (having dismissed federal claims, district court properly declined supplemental jurisdiction of state claims); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (recognizing that under § 1367(c), the district courts "enjoy wide latitude in determining whether or not to retain [supplemental] jurisdiction over state claims when all federal claims have been extinguished") (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

### III. Conclusion

**\*8** For the reasons stated herein, Plaintiff's application to proceed *in forma pauperis* is allowed, and it is recommended that the complaint be dismissed without prejudice.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on Plaintiff. You shall have until **October 26, 2022** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline will bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–17 (4th Cir. 1985).

Submitted the 12th day of October, 2022.

### All Citations

Slip Copy, 2022 WL 19236195

---

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 2614573
Only the Westlaw citation is currently available.
United States District Court, E.D. North Carolina,
Southern Division.

Kathy Juanita REAVES, Plaintiff,

v.

Angela FAULKNER, Freddie Williamson, Michael
Mike Smith, Brenda Fairley-Ferebee, Herman Locklear,
Demetria Grissett, Atkins Trey Michael, Public Schools
of Robeson County, Public Schools of Robeson County
Board of Education, Catherine Truitt, Roy Cooper, Public
Schools of North Carolina, North Carolina Department
of Public Instruction, North Carolina State Board of
Education, and State of North Carolina, Defendants.

NO. 7:22-CV-040-FL
|
Signed March 23, 2023

**Attorneys and Law Firms**

Kathy Juanita Reaves, Mullins, SC, Pro Se.

ORDER

LOUISE W. FLANAGAN, United States District Judge

 **\*1**  This matter is before the court for review of plaintiff's pro
se complaint (DE 1-1, 12) pursuant to 28 U.S.C. § 1915(e).
United States Magistrate Judge Robert B. Jones, Jr. entered
memorandum and recommendation ("M & R"), pursuant to
28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure

72(b), wherein it is recommended plaintiff's complaint be
dismissed. (DE 11). Plaintiff did not file objections to the M
& R, and the time within which to make any objection has
expired. In this posture, the issues raised are ripe for ruling.

Upon careful review of the M & R, the court may "accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28 U.S.C.
§ 636(b)(1). Because no objections have been filed, the court
reviews the magistrate judge's findings and conclusions only
for clear error, and need not give any explanation for adopting
the M & R. Diamond v. Colonial Life & Acc. Ins. Co., 416
F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198,
200 (4th Cir. 1983).

Here, the magistrate judge recommends dismissal of
plaintiff's claims where the statutes under which she purports
to sue do not provide a private right of action, she improperly
attempts to bring claims on behalf of others pro se, and she
fails to state a claim. Upon careful review of the M & R, the
court finds the magistrate judge's analysis to be thorough, and
there is no clear error.

The court therefore ADOPTS the recommendation of the
recommendation of the magistrate judge as its own. For the
reasons stated therein, plaintiff's' complaint is DISMISSED
WITHOUT PREJUDICE for failure to state a claim upon
which relief can be granted, pursuant to 28 U.S.C. § 1915(e)
(2)(B).

SO ORDERED, this the 23rd day of March, 2023.

**All Citations**

Slip Copy, 2023 WL 2614573

**End of Document**　　　　　　　　© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2021 WL 302648
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Kenric LEVER, Plaintiff,

v.

Christina LYONS and Lescele Bogle, Defendants.

16-CV-5130 (MKB) (SJB)
|
Signed 01/27/2021
|
Filed 01/28/2021

**Attorneys and Law Firms**

Kenric Lever, Brooklyn, NY, pro se.

Christina Lyons, Orange, NJ, pro se.

Lescele Bogle, Eastampton, NJ, pro se.

**MEMORANDUM & ORDER**

MARGO K. BRODIE, United States District Judge:

**\*1** Plaintiff Kenric Lever, proceeding *pro se*, commenced the above-captioned action on September 15, 2016, against Defendants Christina Lyons and Lescele Bogle, also proceeding *pro se*. (Compl., Docket Entry No. 1.) In a prior Memorandum and Order, the Court found that complete diversity did not exist between Plaintiff and Lyons and dismissed the action for lack of subject matter jurisdiction but granted Plaintiff leave to amend.[1] Plaintiff filed an Amended Complaint on June 21, 2018, asserting claims of false imprisonment, intentional infliction of emotional distress, and defamation. (Am. Compl., Docket Entry No. 51.) The Court referred the matter to Magistrate Judge Sanket J. Bulsara for a report and recommendation regarding the Court's subject matter jurisdiction. (*See* Order dated Oct. 23, 2018.)

1    *Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (E.D.N.Y. Feb. 26, 2018).

After evidentiary hearings on March 21 and April 3, 2019,[2] Judge Bulsara filed a report and recommendation on September 12, 2019 (the "R&R"), recommending that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction because both Plaintiff and Lyons were domiciled in New York. (R&R, Docket Entry No. 73.) On October 29, 2019, Plaintiff filed objections to the R&R. (Pl.'s Obj. to R&R ("Pl.'s Obj."), Docket Entry No. 75.)

2    (*See* Tr. of Hr'g dated Mar. 21, 2019 ("Lever Tr."), Docket Entry No. 62; Tr. of Hr'g dated Apr. 3, 2019 ("Lyons Tr.") filed Apr. 5, 2019, Docket Entry No. 64.)

For the reasons explained below, the Court adopts the R&R and dismisses the Amended Complaint without prejudice for lack of subject matter jurisdiction.

**I. Background**

**a. Procedural background**

After Plaintiff filed his Complaint on September 15, 2016, Defendants moved to dismiss it on August 9, 2017, for lack of subject matter jurisdiction and failure to state a claim pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively, and for sanctions against Plaintiff. (*See* Letter Mot. to Dismiss by Lescele Bogle, Docket Entry No. 26; Letter Mot. to Dismiss by Christina Lyons, Docket Entry No. 27.) On August 25, 2017, the Court referred the motions to Magistrate Judge Cheryl L. Pollak for a report and recommendation. (*See* Order dated Aug. 25, 2017.)

By report and recommendation dated January 2, 2018, Judge Bulsara[3] recommended that the Court dismiss the Complaint without prejudice for lack of subject matter jurisdiction and deny Defendants' requests for sanctions.[4] (R&R dated Jan. 2, 2018 ("2018 R&R"), at 21, Docket Entry No. 37.) On February 26, 2018, the Court adopted the 2018 R&R in its entirety over Plaintiff's objections. (Mem. and Order dated Feb. 26, 2018, Docket Entry No. 45.)

3    The case was reassigned to Judge Bulsara on September 5, 2017. (*See* Order dated Sept. 5, 2017.)

4    Judge Bulsara found that because Plaintiff and Lyons were domiciled in New York, the complete diversity necessary to support jurisdiction under 28 U.S.C. § 1332 did not exist. (2018 R&R 17.) The

Court adopted the 2018 R&R. (Mem. and Order, Docket Entry No. 45.)

**\*2**  On June 21, 2018, Plaintiff filed an Amended Complaint, (Am. Compl.), [5] and Defendants filed Answers, (Lyons Answer, Docket Entry No. 53; Bogle Answer, Docket Entry No. 54). After evidentiary hearings on the question of subject matter jurisdiction on March 21 and April 3, 2019, (*see* Lever Tr.; Lyons Tr.), by report and recommendation dated September 12, 2019, Judge Bulsara determined that both Plaintiff and Lyons were domiciled in New York when the Complaint was filed and therefore the parties are not completely diverse. (R&R 16.) Judge Bulsara therefore recommended that the Court dismiss the Amended Complaint for lack of subject matter jurisdiction. (*Id.* at 17.) Plaintiff timely filed objections to the R&R. (Pl.'s Obj.)

[5]     The Amended Complaint alleges that Plaintiff is a citizen of New York and that Lyons and Bogle are both citizens of New Jersey. (Am. Compl. 1–2.) Plaintiff seeks $350,000 "from both [D]efendants" and punitive damages to be determined by the Court. (*Id.* at 5.)

### b. Factual background

The Court assumes the truth of the factual allegations in the Amended Complaint for the purposes of deciding Defendants' motions and assumes the parties' familiarity with the facts set forth in the prior opinions. *See Lever v. Lyons*, No. 16-CV-5130, 2018 WL 1521857, at \*1 (E.D.N.Y. Jan. 2, 2018), *report and recommendation adopted*, 2018 WL 1089328 (Feb. 26, 2018). The Court provides only a summary of the relevant facts.

### i. September 2015 police report and court appearances

Plaintiff alleges that on September 8, 2015, Lyons made a false report to Newark, New Jersey, police officers "that [Plaintiff] had threatened to harm her and had posted a story on social media [about] her." [6] (Am. Compl. 4.) The report caused an order of protection to be entered against Plaintiff and led to him standing trial for making terroristic threats on September 14, 2015, in Essex County, New Jersey Superior Court (the "Essex County proceeding"). (*Id.*) At that court appearance, Lyons "produce[d] pictures of her beat up with bruises and a black eye and scratches." (*Id.*) She also submitted those photographs in a proceeding in Kings County Family Court. (*Id.*) Plaintiff contends that text messages

between Lyons and Bogle revealed that they had colluded to cause those injuries and blame Plaintiff. (*Id.*) At the Essex County proceeding, Lyons caused Plaintiff to be served with a complaint that "intentionally defamed" him by stating that he had been abusing Lyons for years. (*Id.* at 5.) Lyons obtained an order of protection that prevented Plaintiff from obtaining work as a collection agent with New York City Transit in April of 2016 because he was ineligible to obtain a handgun license. (*Id.*)

[6]     Because the Amended Complaint and its attachments are not consecutively paginated, the Court refers to the ECF pagination.

Plaintiff further alleges that on July 17, 2016, Lyons made a false report to the 78th Precinct in Brooklyn, New York, that Plaintiff was molesting his child and watching child pornography. (*Id.* at 3.) Lyons' report caused Plaintiff emotional distress and caused him to be imprisoned in a locked room for several hours. (*Id.*) On the same day, Lyons "defamed [Plaintiff] by making false statements to the Superior Court of New Jersey, stating [Plaintiff] was under [f]ederal [i]nvestigation," and submitted to the court pictures of child pornography, which Lyons stated were obtained from Plaintiff's computer. (*Id.* at 4.) Lyons "went to the state of New Jersey and made the same complaint" on July 18, 2016, causing Plaintiff to lose custody of his child. (*Id.* at 3.) Plaintiff contends that on August 31, 2016, the Attorney General of Essex County submitted a report to the New Jersey state court concluding that the child pornography submitted by Lyons came from Lyons' friend, not Plaintiff's computer. (*Id.* at 4.) In addition, Lyons posted "on social media" on an unstated date that Plaintiff had abused her and that she had won a domestic violence case against him. (*Id.* at 5.) Plaintiff alleges that these statements are intentionally false and defamatory. (*Id.*)

### ii. Plaintiff's allegations concerning Lyons' domicile

**\*3**  Plaintiff alleges that Lyons was domiciled in New Jersey when the Complaint was filed and argues that the Court therefore has subject matter jurisdiction. [7] (Am. Compl. 2–3; Deed to 121 Ward Street, Orange, New Jersey 07050 granted to Shawn Landrum, [8] at 8–13, annexed to Am. Compl. as Ex. A, Docket Entry No. 51.) In support, Plaintiff alleges that Lyons has misrepresented her address in prior court appearances because property records reflect that her purported address — 119 Ward Street, Orange, New Jersey,

07050 — does not exist, and is instead "a dual property of 121 [W]ard Street." (Am. Compl. 2.) Plaintiff contends that Lyons testified on August 27, 2014, in Kings County Family Court "that she abandon[ed] New York as her domicile and made the state of New Jersey her new home," and also testified on July 1, 2016, before that same court that she and her child reside in New Jersey. [9] (*Id.*) In addition, Plaintiff contends that Lyons gave her address as 119 Ward Street in each instance. (*Id.*) Plaintiff also asserts that Lyons' attorney stated in a December 6, 2016 hearing in Kings County family court that Lyons lives in New Jersey and requested that proceedings be transferred there. [10] (*Id.*)

[7]   He also alleges that Bogle is domiciled in New Jersey, (Am. Compl. 2), which is not disputed.

[8]   Shawn Landrum is one of the landlords of the property in Orange, New Jersey. (Lever Tr. 32.) Plaintiff asserts that Landrum "just made up" the 119 Ward Street address and that property records establish that the proper addresses for the property are 121A and 121B Ward Street. (*Id.* at 31–32.)

[9]   (Tr. of Hr'g dated Mar. 13, 2013, at 40–47, annexed to Am. Compl. as Ex. D, Docket Entry No. 51; Tr. of Hr'g dated Aug. 27, 2014, at 4, 36–37, annexed to Am. Compl. as Ex. E, Docket Entry No. 51-1; Tr. of Hr'g dated July 1, 2016, at 72, annexed to Am. Compl. as Ex. F, Docket Entry No. 51-1.)

[10]  In a December 6, 2016, hearing before the New York Supreme Court, Kings County, the court noted that a New Jersey court was also hearing a dispute between Plaintiff and Lyons "on the abuse docket" and that the parties' child resided in New Jersey. (Tr. of Hr'g dated Dec. 6, 2016, at 4–6, annexed to Am. Compl. as Ex. G, Docket Entry No. 51-2.) During a March 13, 2013 hearing in the same case, the parties discussed whether the custody exchange of Plaintiff's and Lyons' child, not the legal proceedings, should be moved from New York to New Jersey. (Tr. of Hr'g dated Mar. 13, 2013, at 41–47.)

In further support of his argument that Lyons is a New Jersey domiciliary, Plaintiff relies on the addresses on Lyons' bank and cable television accounts, tax filings in which Lyons "claim[ed] that she d[id] not maintain any living quarters in New York," and copies of pay stubs with an Orange, New Jersey, address that were certified by the Kings County

court. [11] Finally, Plaintiff notes that police officers in Orange, New Jersey, responded to a report at Plaintiff's New Jersey address on August 16, 2016, and found her at home. [12]

[11]  (Am. Compl. 3; Bills from CreditOne Bank and DirecTV, at 10–11, annexed to Am. Compl. as Ex. H, Docket Entry No. 51-2; 2015 Federal and Nonresident and Part-Year Resident State Tax Returns of Lyons, at 13–34, annexed to Am. Compl. as Ex. I, Docket Entry No. 51-2; Paystubs of Christina Lyons for Pay Periods Ending Aug. 31, 2015, Mar. 31, 2016, Apr. 15, 2016, and June 30, 2016, at 36–40, annexed to Am. Compl. as Ex. J, Docket Entry No. 51-2.)

[12]  (Am. Compl. 3; Dep't of Children and Families Investigation Summ. 42–55, annexed to Am. Compl. as Ex. K, Docket Entry No. 51-2.)

### iii. Hearing testimony

Judge Bulsara heard testimony from Plaintiff and Lyons on the issue of Lyons' domicile. Plaintiff testified that he believes that Lyons is a citizen of New Jersey because of (1) statements she made in other court proceedings, transcripts of which he has submitted to the Court; (2) her New York driver's license being issued to a United Parcel Service mailbox address where she had never lived; (3) Lyons' inconsistent statements about where she lived; (4) her January 19, 2013 voter registration in New Jersey; [13] and (5) a lawsuit filed against her in New Jersey by her landlord on July 20, 2018. (*Id.* at 10–11, 17–36.) Plaintiff testified that Lyons first lived in Staten Island, then lived with Plaintiff in Brooklyn. He also testified that in May of 2009, while living with Lyons in Brooklyn, Plaintiff obtained an apartment in Jersey City to ease her commute, (Lever Tr. 5:5–6:13), stopped living with Plaintiff around the end of June of 2009, and continued to live in Jersey City until approximately 2011. (*Id.* at 6:20–25.) Lyons then moved to Irvington, New Jersey, and a year later, to Orange, New Jersey. (*Id.* at 7:2–7.) Plaintiff also testified that he knew where Lyons lived because they shared custody of their daughter, who at the time of the hearing lived with Lyons' mother in Staten Island. (*Id.* at 7:10–8:7.) Between 2010 and 2016, Lyons' mother lived in Newark, New Jersey. (*Id.* at 9:3–25.)

[13]  Plaintiff noted that Lyons was registered to vote in two states, and Judge Bulsara suggested that

2021 WL 302648

"voter rolls are notoriously incorrect" because they are not updated when people move. (Lever Tr. 30:21–31:3.) Plaintiff added that "[w]hen [he] went down to the Board of Elections in New York, they told [him] that [Lyons] took her name off New York State voting and she just recently put it back on in June of last year." (*Id.* at 33:2–5.) Plaintiff submitted Lyons' voter registration records, which showed that she registered to vote in New York in 2008 and 2017 but registered in New Jersey in the interim and is still registered there. (New Jersey Voter Registration Records ("New Jersey Voter Records") 51–54, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. C, Docket Entry No. 67; New York Voter Registration Records, at 88–91, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. I, Docket Entry No. 67.) There were no records of her having voted in New Jersey. (New Jersey Voter Records.)

**\*4** Lyons testified that, beginning at "the end of 2012" and ending approximately five years later, she resided at a Staten Island address and "would just go back and forth" between that address and her mother's residence at 119 Ward Street. (Lyons Tr. 4:13–5:1.) "[A]lmost a year" before the hearing, she moved from that Staten Island address to another New York address. [14] (*Id.* at 2:23–4:16.) She has possessed a New York driver's license ever since she "got [her] license … [fifteen], almost [sixteen] years ago." (*Id.* at 5:4–13.) She never considered herself a resident of New Jersey, but used her mother's New Jersey address as her mailing address until 2018 because Plaintiff was and is "stalking [her]" and she did not feel comfortable disclosing her residence. (*Id.* at 5:14–6:8.) Lyons maintained her mother's apartment in 2016 and 2017 while her mother relocated to Virginia for work. (*Id.* at 7:4–12.) She has never voted in New Jersey, but voted in New York "just this past election" and in 2008, and did not vote anywhere during the intervening years. (*Id.* at 7:15–8:13.) Her car has been registered in her name in New York since 2008 and prior to 2008 was registered in her mother's name. (*Id.* at 8:14–23.)

[14]     Lyons provided both addresses to the Court but the information has been redacted from the public record. (Lyons Tr. 2:22–5:2.)

Judge Bulsara questioned why Lyons had provided a New Jersey address during court proceedings in New Jersey. (*Id.* at 9:6–8.) Lyons testified that custody proceedings had all

occurred in New York, and that "[a]s far as any proceedings in New Jersey, that has been [child services]" proceedings concerning her daughter, who attended school in New Jersey using Lyons' mother's address. (*Id.* at 9:9–10:24.) She further explained that the state was "already familiar with [her] daughter," and as a result, Lyons believed that "when it came to any dealings with the state," New Jersey was the better option. (*Id.* at 9:15–19.) Lyons also testified that in June of 2018, Plaintiff "filed court papers in New Jersey to take custody of [their] daughter," Lyons proved that she was a New York resident, and "the case was then relinquished over to New York." [15] (*Id.* at 11:12–20.)

[15]     Lyons did not testify about the landlord's action against her in New Jersey or about her alleged use of a post office box as an address.

After the hearings, the parties submitted additional evidence, including 2018 records from family court proceedings, (New Jersey Voter Registration Records ("New Jersey Voter Records") 51–54, annexed to Pl.'s Suppl. Submission on Def. Lyons' Residence as Ex. C, Docket Entry No. 67), which Judge Bulsara considered. Lyons told the Court about a similar lawsuit Plaintiff filed in New York state court. (Letter dated May 13, 2019, at 4, Docket Entry No. 71.) In response to an order from Judge Bulsara, (*see* Order dated June 3, 2019), Plaintiff assured the Court that he wanted to move forward with the federal case. (Letter dated June 24, 2019, Docket Entry No. 72.)

### c. The R&R

Judge Bulsara recommended that the Court dismiss the case for lack of diversity subject matter jurisdiction because Lyons and Plaintiff were domiciled in New York at the time Plaintiff filed the Complaint. (R&R.) As an initial matter, Judge Bulsara noted that Plaintiff had the burden of demonstrating complete diversity, and that "[m]uch of the evidence submitted — particularly from [Plaintiff] — is repetitive and duplicative of the evidence previously submitted," which had been insufficient then to establish diversity jurisdiction. (*Id.* at 2, 5, 10–11.) He found that because Lyons had once been a New York domiciliary, Plaintiff needed to show that Lyons intended to change her citizenship. (*Id.* at 6.)

In evaluating the testimony, Judge Bulsara noted that Lyons' ties to the 119 Ward Street address, which was her mother's home, were "beyond dispute" but "not dispositive of [her] citizenship." (*Id.* at 5–6.) He found the property ownership

records for 121 Ward Street that were submitted by Plaintiff to be "of little use," and, if anything, undermined Plaintiff's case because he asserted Lyons' address did not exist, suggesting that there was no record of her owning property in New Jersey and "mak[ing] it less likely that Lyons ever intended to reside there on a permanent basis." (*Id.* at 6.) As to the tax returns, credit card statements, and other documents all listing Lyons' address as 119 Ward Street, Judge Bulsara found them to be of "little consequence" because the Court had considered them in the prior report and recommendation and concluded that those documents "indicate[d] that the address is a temporary, periodic second residence of ... Lyons, not her primary residence or her domicile." (*Id.* at 7–9.) He further determined that the documents Plaintiff submitted after the evidentiary hearings, including filings from family court proceedings in 2018, were of "little value" because they postdated the filing of the Complaint and were "filled with contradictory evidence, much of which is repetitive of facts previously submitted or is of little to no assistance in establishing the parties' respective domiciles." (*Id.* at 9–10.) He determined that some of the documents Plaintiff provided supported the conclusion that Lyons had ties to New York: she had registered to vote in 2017 with a New York address, has a New York driver's license, and had sought medical care for her daughter in Staten Island in 2016 and 2017. (*Id.* at 10 n.5.)

**\*5** Judge Bulsara determined that discussions of residence in state court proceedings involving Plaintiff and Lyons mainly concerned their daughter's residence, which was in New Jersey. (*Id.* at 7.) Judge Bulsara found that the child's residence was less probative of Lyons' domicile than a child's residence would usually be because the child lived with her grandmother in New Jersey, was born in New York, and sometimes lived with her mother in New York. (*Id.* at 6–7.) In addition, filings from the 2018 proceedings in family court postdated the filing of this Complaint and were repetitive or otherwise unhelpful. (*Id.* at 9.) Judge Bulsara credited Lyons' testimony that she did not intend to move permanently to New Jersey and that her ties to that state "were all based on residing with her mother." (*Id.* at 14–16.) Lyons' mother no longer lived in New Jersey, and Lyons no longer maintains ties to the state, suggesting that she did not intend to permanently change her domicile in 2016. (*Id.* at 15–16.) Given this evidence, Judge Bulsara concluded that Plaintiff had not met his burden of showing that Lyons changed her domicile from New York to New Jersey. (*Id.* at 11, 17.)

Judge Bulsara explained that the Court lacked subject matter jurisdiction over the entire action, because a defect in

diversity (unlike a defect in amount in controversy) was an "action-specific" defect that required dismissal of the entire case. (*Id.* at 16–17 (citing *Abu Dhabi Com. Bank v. Morgan Stanley & Co.,* 921 F. Supp. 2d 158, 162 (S.D.N.Y. 2013)).) Therefore, the case could not proceed against Bogle, even though she "does not dispute she is a citizen of New Jersey" and the damages sought against her satisfied the amount-in-controversy requirement. (*Id.* at 16.)

### d. Objections to the R&R

Plaintiff objects to the R&R, [16] arguing that: (1) Judge Bulsara erred in finding that the 119 Ward Street address was the home of Lyons' mother based only on Lyons' testimony and "without any documentation to prove this as fact"; (2) Lyons told the court on May 14, 2018, that she has no knowledge of her mother or her mother's landlords, who evicted her mother from 119 Ward Street in 2018; (3) Judge Bulsara erred in accepting Lyons' stated New York address as accurate when she had given a different, untruthful address on her driver's license; (4) Lyons bought a house in New Jersey in 2018 and has since used that address; (5) Lyons has been registered to vote in New Jersey since 2013 and pays taxes as a New York nonresident, and Lyons' pay stubs show two addresses, one of which is "falsified"; (6) Lyons told the Court that her address is confidential, but freely gave her New Jersey address in other court proceedings; (7) The New York Administration for Children's Services "found [Lyons] does not live nor reside part time at any location" in New York; [17] (8) Plaintiff is suing Lyons' mother, but the courts refuse to accept service at "the address"; and (9) in 2018, a court-appointed attorney for Plaintiff and Lyons' child stated that Lyons was "going state to state saying she lives in the other jurisdiction." [18] (Pl.'s Obj. 1–4.) Plaintiff requests a further hearing in which Lyons' mother and her landlords will testify as to Lyons' permanent address, and in which he will "get statements from [the New York address] where she claims to have lived." (*Id.* at 4.)

[16]     Plaintiff has submitted additional papers with his objections. Under Rule 72(b) of the Federal Rules of Civil Procedure, district courts have discretion to, among other things, "receive further evidence" in considering objections to a magistrate judge's recommended ruling. Fed. R. Civ. P. 72(b); *see also Kazolias v. IBEW LU 363,* 806 F.3d 45, 54 (2d Cir. 2015) ("[T]he governing statute ... expressly provides that the district court [in reviewing

objections to an R&R] 'may also receive further evidence.' " (quoting 28 U.S.C. § 636(b)(1))). In light of Plaintiff's *pro se* status, the Court considers the evidence submitted with his objections, which appears to be largely duplicative of previous submissions. *See Augustin v. Cap. One*, No. 14-CV-179, 2015 WL 5664510, at *2 n.2 (E.D.N.Y. Sept. 24, 2015) (considering additional evidence submitted with *pro se* plaintiff's objections to the magistrate judge's recommended ruling).

17    In a report produced by New York child welfare officials in November of 2018, investigators found that they could not ascertain Lyons' address because she lived in New Jersey and was uncooperative. (Nov. 1, 2018 Ct. Ordered Investigation 71, annexed to Pl.'s Obj. as Ex. O, Docket Entry No. 75.)

18    Plaintiff argues that Lyons contradicts herself by claiming that this Court lacks subject matter jurisdiction even as she brings counterclaims against Plaintiff in this Court. (Pl.'s Obj. 4.) Because subject matter jurisdiction is not waivable, Lyons did not waive defects in subject matter jurisdiction by asserting counterclaims in her answer. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). In addition, based on Judge Bulsara's credibility determinations favoring Lyons, Plaintiff contends that "[t]he [C]ourt seem[s] to have taken a bias stand against [him]." (Pl.'s Obj. 1.) To the extent Plaintiff is making a "bias or partiality motion," the Court denies the application because "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion," *Liteky v. United States*, 510 U.S. 540, 555 (1994) (citing *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966)), and the finding that Lyons' testimony was credible does not reflect the sort of "deep-seated favoritism or antagonism" that would justify an exception to that rule, *id.*

## II. Discussion

### a. Standard of review

*6    A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party

submits a timely objection to a report and recommendation, the district court reviews *de novo* the parts of the report and recommendation to which the party objected. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015) (applying clear error when no objections to the magistrate judge's report and recommendation were filed). The clear error standard also applies when a party makes only conclusory or general objections. Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [magistrate judge's] proposed findings and recommendations."); *see also Colvin v. Berryhill*, 734 F. App'x 756, 758 (2d Cir. 2018) ("Merely referring the court to previously filed papers or arguments does not constitute an adequate objection under ...Fed. R. Civ. P. 72(b)." (quoting *Mario v. P & F Food Mkts., Inc.*, 313 F.3d 758, 766 (2d Cir. 2002))); *Benitez v. Parmer*, 654 F. App'x 502, 503–04 (2d Cir. 2016) (holding that "general objection[s] [are] insufficient to obtain *de novo* review by [a] district court").

### b. Plaintiff has failed to show that in 2018 Lever was domiciled in New Jersey

Plaintiff has not established by clear and convincing evidence that Lyons changed her domicile from New York to New Jersey. [19]

19    Plaintiff does not object to the R&R's findings that Lyons was domiciled in New York at birth and that the claims against Bogle cannot be severed from the rest of the action. The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts those recommendations pursuant to 28 U.S.C. § 636(b)(1).

Federal courts are courts of limited jurisdiction and may not hear cases if they lack subject matter jurisdiction over the issues presented. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The statutory provisions for federal subject matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Under the diversity jurisdiction statute, 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over state law claims where the plaintiff and defendant are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs." 28 U.S.C. § 1332(a); *see also Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) ("Subject matter jurisdiction is based on 28 U.S.C. § 1332, which requires 'complete diversity,' *i.e.*[,] all plaintiffs must be citizens of states diverse from those of all defendants.") (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)); *Lovejoy v. Watson*, 475 F. App'x 792, 792 (2d Cir. 2012) ("The complaint alleged that [the plaintiff] and the defendant resided in New York, thereby precluding diversity jurisdiction.").

"For purposes of diversity jurisdiction, a party's citizenship depends on his domicile. *Davis v. Cannick*, 691 F. App'x 673, 673 (2d Cir. 2017) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)). "Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." *New Canaan Cap. Mgmt., LLC v. Ozado Partners LLC*, No. 16-CV-1395, 2017 WL 1157153, at *4 (S.D.N.Y. Mar. 25, 2017) (quoting *Kennedy v. Trs. of Testamentary Tr. of Will of Kennedy*, 633 F. Supp. 2d 77, 81 (S.D.N.Y. 2009)); *see also Caren v. Collins*, 689 F. App'x 75, 75 (2d Cir. 2017) ("Although the individual plaintiff and the individual defendants are alleged to be residents of certain States, such an allegation is insufficient to plead citizenship."). Moreover, "one may have more than one residence in different parts of this country or the world, but a person may have only one domicile." *Reich v. Lopez*, 858 F.3d 55, 63 (2d Cir. 2017) (quoting *United States v. Venturella*, 391 F.3d 120, 125 (2d Cir. 2004)).

**\*7** "One acquires a 'domicile of origin' at birth, which continues until a change in domicile occurs." *Linardos*, 157 F.3d at 948 (quoting *Miss. Band of Choctaw Indians v. Holyfield*, 490 U.S. 30, 48 (1989)). A person changes their domicile only when they take up residence in a new domicile and intend to stay. *Davis*, 691 F. App'x at 673. To determine whether an individual intends to stay in a particular state and effects a change in domicile, courts must look to the "totality of the evidence," considering, among other factors:

> current residence; voting registration; driver's license and automobile registration; location of brokerage and bank accounts; membership in fraternal organizations, churches, and other associations; places of employment or business; ... payment of taxes; ... whether a person owns or

rents his place of residence; the nature of the residence (*i.e.*, how permanent the living arrangement appears); ... and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 (alterations omitted) (quoting *Kennedy*, 633 F. Supp. 2d at 81). Whether a person intended to change his or her domicile from one state to another is a question of fact, and a "party alleging that there has been a change of domicile has the burden of proving the 'required intent ... to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality,' and must prove those facts 'by clear and convincing evidence.' "[20] *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (alterations omitted) (quoting *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 243–44 (2d Cir. 1984)).

[20] The Second Circuit has clarified that "the factual questions that inform a determination as to federal jurisdiction need not be submitted to a jury and may be resolved by the [c]ourt." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42–43 (2d Cir. 2000) (first citing *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 242 n.2 (2d Cir. 1984); and then citing *Sligh v. Doe*, 596 F.2d 1169, 1171 (4th Cir. 1979)).

The parties agree that Lyons resided, at least temporarily, at 119 Ward Street in New Jersey and used that address to receive mail, but Lyons' residence at that address does not establish that she was domiciled in New Jersey. *See New Canaan Cap. Mgmt., LLC*, 2017 WL 1157153, at *4 ("Domicile is not synonymous with residence; a party can reside in one place and be domiciled in another." (quoting *Kennedy*, 633 F. Supp. 2d at 81)). Lyons' use of her mother's New Jersey address to receive mail, and her use of that address in court, does not contradict her testimony that at the time this lawsuit was filed, she divided her time between New Jersey and New York and did not intend to remain in New Jersey permanently. Similarly, her paying taxes as a New York nonresident does not establish that she intended to remain outside New York permanently, although (as Judge Bulsara recognized) it does provide some support for that conclusion. *See Lawrence Moskowitz CLU Ltd. v. ALP, Inc.*, 830 F. App'x 50, 51 (2d Cir. 2020) ("[T]he

determination of domicile considers factors such as voting, taxes, property, bank accounts, [and] places of business or employment." (citing *Nat'l Artists Mgmt. Co. v. Weaving*, 769 F. Supp. 1224, 1228 (S.D.N.Y. 1991))); *Braten v. Kaplan*, No. 07-CV-8498, 2009 WL 614657, at *3 (S.D.N.Y. Mar. 10, 2009) (noting that where a person pays taxes is one of "a number of factors" relevant to the determination of that person's domicile), *aff'd*, 406 F. App'x 516 (2d Cir. 2011).

**\*8** Moreover, Lyons' residence and actions in 2018, including her ties to a New Jersey address that Plaintiff describes in his objections, are not dispositive of where she was domiciled when the lawsuit was filed in 2016. See *Dukes ex rel. Dukes v. N.Y.C. Emps.' Ret. Sys.*, 581 F. App'x 81, 82 (2d Cir. 2017) (looking to domicile at the time the action was commenced); *Borderud v. Riverside Motorcars, LLC*, No. 18-CV-1291, 2020 WL 2494760, at *4 n.3 (D. Conn. May 13, 2020) ("Because diversity is determined at the time the [c]omplaint is filed, the [c]ourt will disregard evidence concerning events after [the plaintiff] filed his [c]omplaint.") (citing *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019)); *Chappelle v. Beacon Commc'ns Corp.*, 863 F. Supp. 179, 182 n.3 (S.D.N.Y. 1994) ("Because the relevant period for determining [the defendant's] domicile is the time the action is commenced, which in this case is December [of] 1992, evidence which is probative of [the defendant's] domicile after that date is not discussed.").

Other factors support the conclusion that Lyons was domiciled in New York at the time Plaintiff commenced this action. Lyons kept her vehicle registered in New York, voted in New York when she voted (although she was also registered to vote in New Jersey in the years surrounding the filing of the Complaint), and kept a New York driver's license, even though the address on that license was in dispute. See *Halbritter v. Stonehedge Acquisition Rome II, LLC*, No. 07-CV-3848, 2008 WL 926583, at *3 (S.D.N.Y. Apr. 2, 2008) (holding that factors supported the conclusion that the plaintiff was domiciled in New York and not Florida, including that "she was not registered to vote in Florida and had a New York driver's license and all her automobiles registered in New York"); *Kleiner v. Blum*, No. 03-CV-3846, 2003 WL 22241210, at *2 (S.D.N.Y. Sept. 30, 2003) (holding that, where the plaintiff intended to maintain residences in New York and his presumptive Georgia domicile in the long term, "that [the] plaintiff resides in New York, has adult children residing in New York, receives medical care in New York, receives his bills in New York, and maintains a pro bono office in New York[]merely show that, for the past three

years, New York has been [the] plaintiff's principal place of residence" and did not establish New York as his domicile). In addition, Lyons lived with her mother rather than renting her own residence in New Jersey, and no evidence in the record suggests that Lyons planned to live there indefinitely to support her mother. See *Kennedy*, 633 F. Supp. 2d at 81 (holding "whether a person owns or rents his place of residence" is relevant to domicile); *cf. Dukes ex rel. Dukes v. NYCERS*, 2014 WL 583235, *2 (E.D.N.Y. Feb. 12, 2014) (holding that where plaintiff "expressed the intent to remain in Staten Island indefinitely to continue caring for her mother and working in New York City" that fact supported the conclusion she was domiciled in New York), *aff'd, Dukes ex rel. Dukes*, 581 F. App'x at 81. Given the conflicting evidence, Plaintiff has not succeeded in establishing that Lyons changed her domicile from New York, acquired at her birth, to New Jersey. See *Gold v. Katz*, No. 90-CV-7726, 1991 WL 237807, at *3 (S.D.N.Y. Nov. 4, 1991) ("There is a presumption favoring a former domicile over a newly acquired residence." (first citing *Farrell v. Ashton*, No. 89-CV-6706, 1991 WL 29261, at *5 (S.D.N.Y. Feb. 28, 1991); and then citing 13B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3612, at 535 (1984))).

Finally, many of Plaintiff's objections are to Lyons' credibility. Judge Bulsara observed Plaintiff and Lyons at the evidentiary hearing and found Lyons' testimony — including that the 119 Ward Street address was primarily her mother's apartment — to be credible. (R&R 12, 14–15.) Plaintiff has not presented sufficient reason to set aside this credibility determination. See *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge." (quoting *Cullen v. United States*, 194 F.3d 401, 407 (2d Cir. 1999))); *Imbruce v. Buhl*, No. 15-CV-554, 2016 WL 2733097, at *2 (D. Conn. May 10, 2016) (evaluating domicile "from the record and on the basis of the credible testimony of [witnesses] at the evidentiary hearing").

**\*9** Plaintiff has had a full opportunity to present evidence in support of his arguments that Lyons was domiciled in New Jersey at the commencement of this action and has failed to do so. The Court declines to grant Plaintiff further leave to amend the Complaint a second time.

### III. Conclusion

2021 WL 302648

For the foregoing reasons, the Court adopts the R&R and dismisses the action without prejudice for lack of subject matter jurisdiction.

SO ORDERED.

**All Citations**

Slip Copy, 2021 WL 302648

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:23-cv-00913-BKS-TWD   Document 4   Filed 08/30/23   Page 37 of 39

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

2017 WL 3172999
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Thomas J. MORAN, Plaintiff,

v.

PROSKAUER ROSE LLP; Jerold D. Jacobson;
and Keisha Ann Grace Gray, Defendants.

1:17-cv-00423 (MAD/TWD)
|
Signed 07/26/2017

**Attorneys and Law Firms**

APPEARANCES: THOMAS J. MORAN, 500 16th St., Apt.
203, Watervliet, New York 12189, Plaintiff, pro se.

### ORDER

Mae A. D'Agostino, U.S. District Judge

\*1  Plaintiff commenced this action *pro se* on April 17,
2017 against Proskauer Rose LLP ("Proskauer Rose"),
Jerold D. Jacobson ("Defendant Jacobson"), and Keisha
Ann Grace Gray ("Defendant Gray"). *See* Dkt. No. 1. In
an Order and Report-Recommendation dated May 1, 2017,
Magistrate Judge Dancks granted Plaintiff's application to
proceed *in forma pauperis* for filing purposes only and
denied Plaintiff's motion for appointment of counsel. *See*
Dkt. No. 6 at 2, 9. In reviewing the sufficiency of the
complaint, Magistrate Judge Dancks concluded that the Court
lacks subject matter jurisdiction over Plaintiff's claims, and
therefore, despite Plaintiff's *pro se* status, recommended that
Plaintiff's complaint be dismissed with prejudice. *See id.* at
9. On May 26, 2017, Plaintiff filed objections to Magistrate
Judge Dancks's Order and Report-Recommendation. *See* Dkt.
No. 7.

According to the complaint, Proskauer Rose is a global law
firm and Defendants Jacobson and Gray are attorneys with
Proskauer Rose. *See* Dkt. No. 1 at 5. Plaintiff asserts that
Proskauer Rose is counsel for non-party Jewish Board of
Family and Children's Services ("JBFCS"), Plaintiff's former
employer. *See id.* at 5-6. As Magistrate Judge Dancks noted,
according to publicly available documents, Plaintiff filed a
complaint with the New York State Division of Human Rights
("NYSDHR") against JBFCS. *See* Dkt. No. 6 at 4.

Plaintiff alleges that Defendants Jacobson and Gray appeared
at a conference before the NYSDHR on behalf of JBFCS.
*See* Dkt. No. 1 at 5-6. Plaintiff alleges that, at the time of
this conference, Defendants Jacobson and Gray were not
appropriately licensed to practice law in New York State
through the New York State Unified Court System. *See id.*
Plaintiff alleges that he told two of NYSDHR's employees
that "allowing two attorneys with no valid law licenses into
this conference to practice law is fraudulent." *Id.* at 6.

Moreover, Plaintiff alleges that Defendant Jacobson wrote
a "fraudulent" email response to Plaintiff's NYSDHR
complaint since Defendant Jacobson's "law license [was]
expired at the time the [r]esponse was sent." *Id.* Plaintiff
also argues that, because of Defendant Jacobson's personal
relationship with the JBFCS, it is inappropriate for him
"to handle the issues of the Jewish Board." *Id.* at 7.
Furthermore, Plaintiff claims that Defendant Gray "tricked
[Maria] Di Cosimo of Lexis-Nexis into providing Ms.
Gray with information that was obtained through Ms. Di
Cosimo's connection with Lexis-Nexis fraudulently." *Id.*
Plaintiff requests $240 million in total from Defendants and
an injunction preventing Defendant Proskauer Rose from
"continuing its practice of allowing attorneys with no law
licenses to practice law in the State of New York as well as
the United States." *Id.* at 8.

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2003) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has opined that the court is obligated
to "make reasonable allowances to protect *pro se* litigants"
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Id.* (quoting *Traguth v. Zuck*, 710
F.2d 90, 95 (2d Cir. 1983)). However, "[t]he right of self-
representation does not exempt a party from compliance with
the relevant rules of procedural and substantive law." *Massie
v. Ikon Office Solutions, Inc.*, 381 F. Supp. 2d 91, 94 (N.D.N.Y.
2005) (quoting *Clarke v. Bank of New York*, 687 F. Supp. 863,
871 (S.D.N.Y. 1988)).

\*2  In reviewing a report and recommendation, a district
court "may accept, reject, or modify, in whole or in part,
the findings or recommendations made by the magistrate
judge." 28 U.S.C. § 636(b)(1)(C). When a party makes
specific objections to a magistrate judge's report, the district

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

court engages in *de novo* review of the issues raised in the objections. *See id.*; *Farid v. Bouey*, 554 F. Supp. 2d 301, 307 (N.D.N.Y. 2008). When a party fails to make specific objections, the court reviews the magistrate judge's report for clear error. *See Farid*, 554 F. Supp. 2d at 307; *see also Gamble v. Barnhart*, No. 02-CV-1126, 2004 WL 2725126, *1 (S.D.N.Y. Nov. 29, 2004). As mentioned, Plaintiff has submitted objections to the Order and Report-Recommendation. *See* Dkt. No. 7.

Federal courts are courts of limited jurisdiction and may not preside over cases absent subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 552 (2005). Federal jurisdiction is available only when a "federal question" is presented or when the plaintiff and the defendant are of diverse citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. When a court lacks subject matter jurisdiction, dismissal of the complaint is mandatory. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006). Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

In order to invoke "federal question" jurisdiction, a plaintiff's claims must arise "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Here, as Magistrate Judge Dancks concluded, Plaintiff has failed to allege a claim that arises under the Constitution or laws of the United States of America. Plaintiff's main allegation surrounds the state bar licensure of two private attorneys employed by a private limited liability partnership. *See* Dkt. No. 1 at 5. There is no federal claim that can be inferred from the facts alleged.

Plaintiff has submitted his allegations on a form that is provided by the Court for *pro se* litigants to file civil rights complaints pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See id.* at 1. However, there is no indication from Plaintiff's allegations that a Section 1983 claim could be supported. In his objections, Plaintiff agreed with Magistrate Judge Dancks that the reason he used a civil rights complaint form was because it was provided to him by the Court. *See* Dkt. No. 7 at 4.

To state a Section 1983 claim, "a plaintiff must allege (1) 'that some person has deprived him of a federal right,' and (2) 'that the person who has deprived him of that right acted under color of state ... law.' " *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640

(1980)). Moreover, "[b]ecause the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.' " *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (quoting *United States v. Int'l Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991)). The conduct of a private actor may be considered state action when the private actor "is a willful participant in joint activity with the State or its agents." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)).

**\*3** Defendants Jacobson and Gray are private attorneys working for a private law firm. *See* Dkt. No. 1 at 5. Plaintiff does not allege that Defendants had any affiliation with the State of New York beyond their licensure, and therefore, they cannot be deemed "state actors" under Section 1983. *See Licari v. Voog*, 374 Fed. Appx. 230, 231 (2d Cir. 2010) ("[P]rivate attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims.") (citing *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997)). Furthermore, Proskauer Rose's registration as a domestic limited liability partnership with the State of New York does not render it a "state actor." [1] *See Cranley v. Nat'l Life Ins. Co. of Vt.*, 318 F.3d 105, 112 (2d Cir. 2003) (citing *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 543-44 (1987)). Plaintiff has also failed to allege that Defendants conspired with any state actor to violate his constitutional rights. Accordingly, Plaintiff has failed to allege a cause of action that provides this Court with subject matter jurisdiction under 28 U.S.C. § 1331. Plaintiff's objections offer nothing to cure this defect.

[1]    As Magistrate Judge Dancks noted, Proskauer Rose is listed as a domestic registered limited liability partnership with the New York State Division of Corporations. *See* Dkt. No. 6 at 8 n.4.

As Magistrate Judge Dancks also found, Plaintiff has failed to establish a basis for diversity jurisdiction under 28 U.S.C. § 1332. *See* Dkt. No. 6 at 8. Diversity jurisdiction is only proper where "all of the adverse parties in a suit [are] completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)). For the purposes of diversity jurisdiction, the citizenship of limited liability partnerships, like Proskauer Rose, is determined by the citizenship of all of its members.

Moran v. Proskauer Rose LLP, Not Reported in Fed. Supp. (2017)

2017 WL 3172999

*See Carden v. Arkoma Associates*, 494 U.S. 185, 195-96 (1990); *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51-52 (2d Cir. 2000).

Here, the complaint states that Plaintiff lives in Watervliet, New York, and that Defendants Jacobson and Gray are also citizens of New York. *See* Dkt. No. 1 at 1-2, 5. Proskauer Rose's citizenship is determined by the citizenship of each of its members, including Defendants Jacobson and Gray. [2] *See id.* As such, all parties are citizens of New York, and this Court lacks diversity jurisdiction over Plaintiff's claims. Accordingly, Plaintiff's complaint is dismissed.

[2]    Defendants Jacobson and Gray are listed as partners on the Proskauer Rose website. *Professionals*, Proskauer Rose, http://www.proskauer.com/professionals/ (last visited July 13, 2017).

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted). As Magistrate Judge Dancks found, lack of subject matter jurisdiction is a substantive defect that cannot be cured by better pleading. *See*

Dkt. No. 6 at 9; *see also Planck v. Schenectady Cty.*, No. 1:12-CV-0336, 2012 WL 1977972, *6 (N.D.N.Y. June 1, 2012). As such, Plaintiff's complaint is dismissed with prejudice. [3]

[3]    Since the Court is dismissing Plaintiff's complaint with prejudice, the Court will not address Plaintiff's objection to Magistrate Judge Dancks's denial of Plaintiff's motion for appointment of counsel.

**\*4**  Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Dancks's Order and Report-Recommendation (Dkt. No. 6) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED in its entirety without leave to amend**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3172999

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.